BP / SOHIO CLAIM
PHYSICAL DAMAGE / PREJUDGMENT INTEREST
SCHEDULE A

| Item No. | Claim Description | Provable Damage | Stipulated Prejudgment Interest Date | Calculated Prejudgment Interest To 7/18/80 |
|---|---|---|---|---|
| I–1&2 | Marine Dock | $ 4,754,819 | 11/1/75 | $ 2,354,111 |
| I–3 | Warehouse Contents | 78,885 | 1/31/75 | 45,268 |
| I–4a | Onshore Damage Unrepaired | 30,280 | 1/31/75 | 17,376 |
| I–4b | Onshore Damage Repaired | 105,495 | 4/1/75 | 58,655 |
| I–5 | Line Fill Loss | 16,000 | 1/31/75 | 9,182 |
| I–7 | Firefighting | 37,686 | 1/31/75 | 21,626 |
| II–1 | Jumper Line | 350,000 | 1/31/75 | 200,848 |
| II–4 | Barge Dock | 6,250,000 | 3/31/75 | 3,475,000 |
| II–6 | Sun Oil Terminaling | 1,282,715 | 7/1/75 | 679,518 |
| II–7 | Lightering | 575,335 | 7/1/75 | 304,784 |
| II–8 | Gauging | 36,175 | 7/1/75 | 19,164 |
| II–9 | Spot Demurrage | 20,279 | 7/1/75 | 10,742 |
| II–10 | Time Charter Delay | 123,712 | 7/1/75 | 65,537 |
| II–11 | Incremental Transport | 188,600 | 3/1/75 | 106,644 |
| II–12 | Bunker Fuel Transport | 40,531 | 7/1/75 | 21,471 |
| II–13 | Increased Charter Costs | 2,200,000 | 7/1/75 | 1,165,450 |
| II–14 | Import Fees | 96,627 | 7/31/75 | 50,377 |
| II–15 | Miscellaneous | 1,400 | 1/31/75 | 803 |
| | | $16,188,539 | | $8,606,556 |

**UNITED STATES of America,**

v.

**Alberda JONES.**

**Cr. No. 83–81.**

United States District Court,
D. South Carolina,
Columbia Division.

July 13, 1983.

Eric Wm. Ruschky, Asst. U.S. Atty., Columbia, S.C., for plaintiff.

Michael J. Cox, Asst. Federal Public Defender, Columbia, S.C., for defendant.

## ORDER

HAMILTON, District Judge.

Alberda Jones moves to dismiss the indictment[1] charging her with a violation of 18 U.S.C. § 922(h)(4), receipt of a firearm by a person who has been committed to a mental institution, on the basis that the legislative classification under 18 U.S.C. § 922(h)(4) violates the equal protection component of the Fifth Amendment due process clause of the United States Constitution in that it creates an invidious discrimination against all persons who have been "committed to any mental institution" regardless of their present mental status and without any rational basis.

On February 8, 1983, Jones allegedly purchased a Colt .38 caliber revolver from a federally licensed firearms dealer in Columbia, South Carolina, which had been purportedly shipped in interstate commerce. While not pertinent to the constitutional issues at hand, Jones allegedly completed Treasury Form 4473, entitled "Firearms Transaction Record," on which she answered "No" to the question: "Have you ever been . . . committed to a mental institution? In fact, Jones had been committed to the South Carolina State Hospital, a mental institution, on at least three occasions during the years 1974 to 1978. It should be noted that Jones is not charged with making a false statement in connection with the acquisition of a firearm under 18 U.S.C. § 922(a)(6).

Defendant contends that 18 U.S.C. § 922(h)(4) is unconstitutional in that it constitutes invidious discrimination against individuals who fall within the broad category of persons committed to a mental institution. She asserts, in essence, that persons within this classification are punished due to their status. Jones urges the court to find that the classification serves no legitimate governmental purpose or interest and therefore constitutes invidious discrimination in violation of her constitutional right to equal protection of law as guaranteed by the due process clause of the Fifth Amendment to the United States Constitution.

Section 922(h)(4), Title 18 of the United States Code, provides in pertinent part:

(h) It shall be unlawful for any person—

. . . .

(4) who has been adjudicated as a mental defective or who has been committed to any mental institution;

to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

---

1. Based on medical evaluation reports and on motion of the Government, Count 2 of this two-count indictment charging assault of a federal agent engaged in the performance of his official duties with the use of a dangerous weapon, was dismissed. 18 U.S.C. §§ 111 & 1114. The alleged assault occurred some three (3) weeks subsequent to the 18 U.S.C. § 922(h)(4) receipt of the firearm to which

Jones has noticed a defense based on mental condition. According to medical evaluation reports, Jones, a paranoid schizophrenic of average or above intelligence, did not lack substantial capacity either to appreciate the criminality of her conduct or to conform her conduct to the requirements of the law when she received the firearm. Jones has been adjudicated competent by this court to stand trial.

A review of reported cases has not revealed any decisions challenging or testing the constitutionality of 18 U.S.C. § 922(h)(4). Other classifications in section 922, including classifications in subsections (1)–(3) of § 922(h) have been upheld. *See United States v. Fauntleroy,* 488 F.2d 79 (4th Cir.1973); *United States v. Giles,* 640 F.2d 621 (5th Cir.1981); *United States v. Johnson,* 497 F.2d 548 (4th Cir.1974); *United States v. Weatherford,* 471 F.2d 47 (7th Cir.1973), *cert. denied,* 411 U.S. 972, 93 S.Ct. 2144, 36 L.Ed.2d 695; *United States v. Weiler,* 458 F.2d 474 (3d Cir.1972); *United States v. Ocegueda,* 564 F.2d 1363 (9th Cir. 1977); *United States v. Weingartner,* 485 F.Supp. 1167 (D.N.J.1979), *appeal dismissed,* 642 F.2d 445 (3d Cir.1981); and *United States v. Ziegenhagen,* 420 F.Supp. 72 (E.D. Wis.1976). *See also United States v. Buffaloe,* 449 F.2d 779 (4th Cir.1971).

Section 922(h)(4), Title 18, U.S. Code, is a part of the Gun Control Act of 1968, Pub.L. No. 90–618, 82 Stat. 1213, which amended the Omnibus Crime Control and Safe Streets Act of 1968, Pub.L. No. 90–351, 82 Stat. 225 (hereinafter collectively referred to as the "Act"). The legislative history of the Act is reviewed in detail in *Huddleston v. United States,* 415 U.S. 814, 94 S.Ct. 1262, 1263, 39 L.Ed.2d 782 (1974). *See also* S.Rep. No. 1097, 90th Cong., 2d Sess. 2 (1968), U.S.Code Cong. & Ad.News 1968, pp. 2113–2114. "The principal purpose of the federal gun control legislation, therefore, was to curb crime by keeping 'firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency.'" *Huddleston,* 94 S.Ct. at 1268–1269, citing S.Rep. No. 1051, 90th Cong., 2d Sess. 22 (1968), U.S.Code Cong. & Ad.News 1968, p. 4410. "... No one can dispute the need to prevent drug addicts, mental incompetents, *Persons with a history of mental disturbances,* and persons convicted of certain offenses from buying, owning, or possessing firearms. This bill seeks to maximize the possibility of keeping firearms out of the hands of such persons." *Huddleston,* 94 S.Ct. at 1270, citing Congressman Celler's remarks at 114 Cong.Rec. 13647, 21789 (1968) (emphasis added). "The Act itself thus contemplates interference with the ownership of weapons when those weapons fall into the hands of juveniles, criminals, drug addicts and mental incompetents." *Huddleston,* 94 S.Ct. 1270, n. 9.

While no decisions have been found challenging the constitutionality of 18 U.S.C. § 922(h)(4), a number of decisions deal with violations of 18 U.S.C. §§ 922(a)(6) and 922(d)(4), the making of false statements when purchasing firearms by "[a] person [who] has been adjudicated as a mental defective or has been committed to any mental institution." *United States v. Buffaloe,* 449 F.2d 779 (4th Cir.1971); *United States v. Seidenberg,* 420 F.Supp. 695 (D.Md.1976), *aff'd, without op.,* 577 F.2d 738, *cert. denied,* 439 U.S. 903, 99 S.Ct. 268, 58 L.Ed.2d 249; *United States v. Cottle,* 472 F.2d 1037 (9th Cir.1972); and *United States v. Hansel,* 474 F.2d 1120 (8th Cir.1973). In *Cottle,* no constitutional challenge was raised; the defendant was convicted for a violation of 18 U.S.C. § 922(a)(6), falsely certifying that he had not been adjudicated as a mental defective or committed to a mental institution. In *Hansel,* the conviction for a violation of 18 U.S.C. § 922(a)(6) was reversed on the basis that the accused had not been "committed" because there was no compliance with the applicable state statute. The court, after reviewing the accused's history of mental illness, went on to say:

> If it is the desire of Congress to prohibit persons who have *any history of mental illness* from possessing guns, it can pass legislation to that effect, but we cannot read into this criminal statute an intent to do so. We can speculate that Congress desired to keep guns from all who had a history of mental illness and we might agree that such a policy would be desirable; but we can find no support for such a holding on our part. 474 F.2d at 1125 (emphasis added).

In *Seidenberg,* the court denied defendant's motion to dismiss the indictment charging him with a violation of 18 U.S.C. § 922(a)(6) for falsely stating, in connection

with the purchase of a firearm, that he had never been adjudicated a mental defective or committed to a mental institution, emphasizing that the purpose of § 922(a)(6) of providing a scheme of gun regulation, would be furthered by compelling full and honest disclosure with respect to any fact material to the lawfulness of the firearm sale by a licensed firearms dealer.

In *Buffaloe,* following his state court trial for maiming and a verdict of not guilty by reason of insanity, defendant was committed to the Central State Hospital as a criminally insane person. Some 16 months later, he was discharged from the hospital as not then insane or feebleminded. Subsequently, he was convicted of a violation of 18 U.S.C. § 922(a)(6). In affirming his conviction, the Fourth Circuit Court of Appeals held:

> We agree with the district judge that *Buffaloe* was adjudicated and committed within the meaning of 18 U.S.C. § 922(d)(4), which prohibits the sale of firearms to a person who has been adjudicated a mental defective or who has been committed to any mental institution.
>
> We also conclude that the statute is not unconstitutional as to *Buffaloe* because 16 months later he was discharged from the hospital. 449 F.2d at 780.

While *Buffaloe* was convicted of making a false statement under 18 U.S.C. § 922(a)(6) with respect to his having been adjudicated a mental defective or committed to a mental institution, 18 U.S.C. § 922(d)(4), the language of § 922(d)(4) is the same as that found in 18 U.S.C. § 922(h)(4). In *Buffaloe,* the court concluded "... the statute is not unconstitutional as to *Buffaloe* ...." 449 F.2d at 780.

A review of these cases offers but little assistance to the court in its task of determining the rational basis for the classification of which defendant Jones complains. She would have the court find that the fatal defect of 18 U.S.C. § 922(h)(4) is that it does not distinguish between people with present mental problems who may act in a violent fashion and people who at some time in the past had been adjudicated as a mental defective or committed to mental institutions but who are now completely stable and nonviolent. *Cf. United States v. Fauntleroy,* 488 F.2d 79 (4th Cir.1973). Jones would urge that the effect of § 922(h)(4) is to *punish* people because they fall within a very broad category of persons adjudicated mentally defective or who have been committed to any mental institution. She would urge, in essence, that persons within that classification are punished due to their status. However, it is not the *classification* itself which subjects this defendant to a violation of § 922(h)(4). It is the *receipt of any firearm* by a person of her status classification which constitutes a violation of the statute (emphasis added). This distinction was applied in *United States v. Ocegueda,* 564 F.2d 1363 (9th Cir. 1977).

█ In applying the equal protection clause to social and economic legislation, great latitude is given to the legislature in making classifications, and a statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify such a classification. *United States v. Thoresen,* 428 F.2d 654, 658 (9th Cir. 1970), quoting from *Levy v. Louisiana,* 391 U.S. 68, 71, 88 S.Ct. 1509, 1511, 20 L.Ed.2d 436 (1968) and *McGowan v. Maryland,* 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961). Since there is no absolute constitutional right of an individual to possess a firearm, *United States v. Miller,* 307 U.S. 174, 59 S.Ct. 816, 83 L.Ed. 1206 (1939); *United States v. Swinton,* 521 F.2d 1255 (10th Cir.1975), the test of determining the constitutionality of 18 U.S.C. § 922(h)(4) depends on finding a rational basis for the particular classification. *Thoresen,* 428 F.2d at 659. It is presumed that legislatures act advisedly and with adequate knowledge of existing conditions sought to be corrected by the legislation and that the legislative action is not arbitrary or unreasonable. *Polk Co. v. Glover,* 305 U.S. 5, 59 S.Ct. 15, 83 L.Ed. 6 (1938).

█ From the legislative history of the Act, the rational basis for the classification in § 922(h)(4) is readily apparent to this

court. This court cannot find the classification of 18 U.S.C. § 922(h)(4) irrational, when considered in light of the Congressional intent to keep firearms away from persons considered as potentially irresponsible and dangerous. This conclusion is buttressed by the decisions finding a rational basis for including unlawful drug users, addicts, fugitives from justice, and felons as persons prohibited from receiving firearms under the Act. In this court's view, it is just as rational to prohibit persons within the category of 18 U.S.C. § 922(d)(4) and § 922(h)(4) from purchasing and/or receiving firearms. "Under these circumstances [this court] will not blindly incant the rule of lenity to 'destroy the spirit and force of the law which the legislature intended to [and did] inact'" [citations omitted]. *Huddleston*, 94 S.Ct. at 1272.

For the foregoing reasons, and based on the cited authorities, defendant's motion to dismiss the indictment is denied.