Anthony J. GALIOTO, Plaintiff,

v.

The DEPARTMENT OF the TREA-
SURY, BUREAU OF ALCOHOL,
TOBACCO AND FIREARMS, Defendant.

No. Civ. A. 84–2045.

United States District Court,
D. New Jersey.

Feb. 7, 1985.

Bianchi & Casale by Michael A. Casale, Nutley, N.J., for plaintiff.

W. Hunt Dumont, U.S. Atty. by Peter R. Ginsberg, Asst. U.S. Atty., Newark, N.J., for defendant.

## OPINION

SAROKIN, District Judge.

## INTRODUCTION

In a society which persists and insists in permitting its citizens to own and possess weapons, it becomes necessary to determine who may and who may not acquire them. At issue in this matter is a statute reminiscent of the Dark Ages, which permits a person convicted of a crime to purchase a gun under certain circumstances, but denies that same right to a person once committed for mental illness no matter what the circumstances. Apparently one who has been convicted of a crime can be relieved of the stigma arising from such a conviction, but a commitment for mental illness renders one permanently disqualified. The statute thus implies that mental illness is incurable, and that those persons with a history of mental illness who have never committed a crime are deemed more likely to commit one in the future than those persons who have actually done so in the past. If persons with criminal records are permitted to purchase and possess weapons after meeting certain standards, certainly persons who have conquered past

mental illness are entitled to the same consideration and rights. To impose a perpetual and permanent ban against anyone who has ever been committed for mental illness, no matter how ancient the commitment or how complete the cure, is to elevate superstition over science and unsupported fear over equal protection and due process. Accordingly, the court finds this provision of the subject statute to be unconstitutional.

■ The instant motion has been brought by defendant to dismiss plaintiff's complaint or, in the alternative, for summary judgment. A party moving for summary judgment cannot prevail unless there exists no genuine issue of material fact and the party is entitled to judgment as a matter of law. *Sunshine Books, Ltd. v. Temple University*, 697 F.2d 90, 95 (3d Cir. 1982). When the court has determined upon undisputed facts that the non-moving party, rather than the movant, is entitled to judgment as a matter of law, "it is well within the district court's discretion to enter summary judgment for the non-moving party." *Selected Risks Ins. Co. v. Bruno*, 555 F.Supp. 590 (M.D.Pa.1982) *rev'd on other grounds*, 718 F.2d 67 (3d Cir.1983); *see also* 6 *Moore's Federal Practice*, ¶ 56.-12 (2d ed.1984). Such is the case here. The defendant Bureau of Alcohol, Tobacco, and Firearms (Bureau), asks the court to grant summary judgment in its favor on the grounds that the plaintiff has no entitlement to relief under 18 U.S.C. § 925(c), pursuant to which the plaintiff sues. Instead, the court finds that section 925(c) and the related statutory provisions in 18 U.S.C. § 921 *et seq*, are invalid as infringements upon the plaintiff's right to due process as guaranteed by the fifth amendment to the United States Constitution.

## FACTS

Plaintiff Anthony Galioto is a 57-year-old longstanding resident of West Orange, New Jersey. Galioto served in the Armed Forces from 1951 to 1953, was honorably discharged, and has since held a position as an engineer with the New York and New Jersey Port Authority. Plaintiff's Memo-

randum of Law, Exh.D. In 1971, having had no prior history of mental illness, Galioto suffered an acute mental breakdown and voluntarily entered Fair Oaks Hospital in Summit, New Jersey. Plaintiff's Mem., Exh. B. He was diagnosed as having suffered an acute schizophrenic episode with paranoid features. Galioto remained hospitalized for twenty-three days from May 11 to June 4, 1971.

During Galioto's hospital stay, when Galioto expressed his intention to leave, his physician, Dr. R.G. Alvarez, sought to have him committed. On May 31, 1971, the Essex County Juvenile and Domestic Relations Court entered a final order of commitment. Galioto was released five days later, after Dr. Alvarez determined that Galioto's condition had improved. There is no evidence that Galioto was ever again hospitalized for mental illness.

Ten years after this hospitalization, Galioto applied to the Superior Court of New Jersey, Essex County, Law Division, for an order granting him a firearms purchase identification card pursuant to New Jersey Statute Annotated 2C:58–3(b), which order was granted on April 27, 1981. Thereafter, in October, 1982, plaintiff attempted to purchase a firearm at Ray's Sport Shop in North Plainfield, New Jersey. Ray's Sport Shop refused to sell any firearm to plaintiff when he responded "yes" to a question on a standard Bureau questionnaire asking: "Have you ever been adjudicated mentally defective or have you ever been committed to a mental institution?" 18 U.S.C. § 922(d)(4) makes it unlawful for a licensed dealer in firearms "to sell ... any firearm ... to any person knowing or having reasonable cause to believe that such person ... has been adjudicated as a mental defective or has been committed to any mental institution." [1]

A few days after said refusal, Galioto applied to the defendant Bureau in Washington, D.C., for a release from firearms disability pursuant to 18 U.S.C. § 925(c). Papers submitted by plaintiff included a certification from Dr. Alvarez, the physician who had sought Galioto's commitment in 1971, to the effect that Galioto was no longer suffering from any mental disability that would interfere with his handling of firearms. Section 925(c), under which Galioto sought relief from his firearm disability, provides in pertinent part:

A person who has been convicted of a crime punishable for a term exceeding one year (other than a crime involving the use of a firearm or other weapon or a violation of this chapter or of the National Firearms Act) may make application to the Secretary for relief from the disabilities imposed by Federal laws with respect to the acquisition ... of firearms and incurred by reason of such conviction, and the Secretary may grant such relief if it is established to his satisfaction that the circumstances regarding such conviction, and the applicant's record and reputation, are such that the applicant will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest.[2]

There is no equivalent provision establishing a mechanism by which a former mental patient can seek relief from the firearms disabilities imposed upon him by federal law. By letter dated April 13, 1984, the Director of the Bureau of Alcohol, Tobacco, and Firearms, Stephen E. Higgins, denied plaintiff's application for relief from firearms disability, asserting that Galioto was "subject to Federal firearms disability because of his commitment." Exhibit A to Complaint.

---

**1.** Another subsection of section 922, section 922(h)(4), makes it unlawful for "any person ... who has been adjudicated as a mental defective or who has been committed to any mental institution ... to receive any firearm ... which has been shipped or transported in interstate or foreign commerce."

**2.** Firearm disabilities equivalent to those imposed on persons who have been adjudicated mentally defective or committed to a mental institution are imposed on persons who have "been convicted in any court of ... a crime punishable by imprisonment for a term exceeding one year." §§ 922(d)(1) and 922(h)(1).

The Bureau argues in support of its motion that it was powerless to release Galioto from disability under section 925(c), because that section allows for a release from disability *only* for those disabled due to criminal convictions, not those disabled as a result of past commitment to a mental institution. Sections 922(d)(4) and (h)(4), according to the Bureau, create a permanent and irreversible disability for anyone ever committed to a mental institution, without regard to the length of the commitment, the length of the interval between the commitment and the proposed firearms purchase, the source or severity of the original illness, the improvement of the person subject to the disability, the evolution of medical knowledge about the illness for which the former patient was committed, or the propriety and correctness of the commitment in the first instance.[3]

## DISCUSSION

### I. *Issues of Fact*

Plaintiff has contended, in defense of this motion, that there remains a disputed issue of fact which ought to preclude summary judgment. He argues that the Director's decision to deny plaintiff relief rested on two factual determinations: "(1) that plaintiff had been committed to a mental institution and (2) that plaintiff was discharged on a determination other than a finding that he was competent." Plaintiff's Mem. at 3; also Exh. A to Complaint. Plaintiff argues that the Director would or should have released plaintiff from his disability had he found that plaintiff's commitment was "factually erroneous," that is, that plaintiff "was not mentally ill at the time of his commitment or alternatively that he was subsequently discharged based on a finding of mental competence." Plaintiff's Mem. at 5. Plaintiff does not argue that his commitment was, in fact, "erroneous," but notes that it was of short duration. The Bureau maintains, on the other hand, that the fact of plaintiff's commitment alone is enough to disable him permanently, whether or not that commitment was erroneous. It notes in any event that plaintiff was prescribed medication upon his discharge, indicating that he was not wholly "competent" at that time.

The court finds no issue of fact raised here that should preclude summary judgment in favor of the plaintiff. The Bureau has taken the position that it is powerless under sections 922 and 925 to release plaintiff from his disability even if it were shown as a matter of fact that plaintiff's commitment was indeed erroneous, or for any other reason. This interpretation is entitled to some, albeit limited, deference as an indication of the intended "meaning" of the statute. *Columbia Gas Transmission Corp. v. F.P.C.*, 530 F.2d 1056, 1059 (D.C.Cir.1976) (deference given to agency's determination of meaning of statute in light of agency expertise); *Erickson Air Crane Co. of Washington, Inc. v. United States*, 731 F.2d 810, 814 (Fed.Cir.1984) ("legal interpretations by tribunals having expertise are helpful [to reviewing court]"). Moreover, the Bureau presents a plausible argument that the statute is to be read literally, relying on *Dickerson v. New Banner Institute*, 460 U.S. 103, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983) (state expunction of conviction did not relieve plaintiff of firearms disability under literal terms of 18 U.S.C. §§ 921 *et seq.*, imposing disability based on fact of conviction), and that section 925 simply does not give it authority to relieve plaintiff of his disability, whatever the circumstances surrounding his commitment or thereafter. In general, a court should avoid reaching a constitutional question when an issue can be resolved as a matter of statutory interpretation. *See, e.g., United States v. Security Industrial Bank*, 459 U.S. 70, 103 S.Ct. 407, 411, 74 L.Ed.2d 235 (1982); *Railroad Comm'n v. Pullman*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Here, however, where the statutory interpretation of the agency is well-founded and where the plaintiff has not submitted evidence to demonstrate that

---

**3.** The court has serious doubt whether an applicant could collaterally attack such a commitment in this type of a proceeding, even if appropriate means were provided to seek relief.

he comes within the exception to the statute which he urges, it is not necessary to prolong these proceedings in anticipation of further proofs in order to avoid confronting the patent constitutional defect in section 921, *et seq.* The purpose of summary judgment is "to eliminate a trial in cases in which it is unnecessary and would only cause delay and expense." *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).

### 2. *Issues of Law—The Statute's Infirmity Under the Fifth Amendment*

■ It is well settled that the due process clause of the fifth amendment includes an equal protection component. *See, e.g., Nat'l Black Police Ass'n, Inc. v. Velde*, 712 F.2d 569, 580 (D.C.Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 2180, 80 L.Ed.2d 562 (1984). Federal government action violates the equal protection component of the due process clause when it treats similarly situated groups differently without a substantial or compelling government interest, if the groups are suspect or "quasi-suspect" classes entitled to enhanced scrutiny, or a fundamental right is involved, or if it acts without a rational basis, where the groups are not suspect classes and no fundamental right is implicated. *Plyler v. Doe*, 457 U.S. 202, 216–18, 102 S.Ct. 2382, 2394–95, 72 L.Ed.2d 786 (1982). A legislative classification is treated as "suspect" when it is

> more likely than others to reflect deep-seated prejudice rather than legislative rationality in pursuit of some legitimate objective. Legislation predicated on such prejudice is easily recognized as incompatible with the constitutional understanding that each person is to be judged individually and is entitled to equal justice under the law.

*Id.* at 216–17 n. 14, 102 S.Ct. at 2394 n. 14. Certain groups, although not "suspect," are deserving of a higher level of scrutiny than is accorded most legislative classifica-

tions. Differential treatment of these groups must be justified by a "substantial" state interest, because the groups have been historically "subjected to unique disabilities on the basis of stereotyped characteristics not truly corresponding to the attributes of [their] members." *J.W. v. City of Tacoma, Wash.*, 720 F.2d 1126, 1129 (9th Cir.1983). The Supreme Court has extended such enhanced scrutiny thus far to classifications by sex, *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), by legitimacy of birth, *Lalli v. Lalli*, 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978), and by lawfulness of presence within the United States, *Plyler v. Doe*, 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982). *See also United States v. Cohen*, 733 F.2d 128 (D.C.Cir.1984).

■ This court concludes that persons with histories of mental illness are a quasi-suspect class deserving of intensified "intermediate" scrutiny; that is, any statute treating them differentially must be related to a "substantial" governmental interest. Even if persons with histories of mental illness are not a quasi-suspect class deserving of heightened scrutiny, the provisions of 18 U.S.C. § 921 *et seq.* are simply not rational to the extent that they treat former mental patients differently *vis a vis* convicted criminals, in that they permanently deprive former mental patients of the opportunity to demonstrate changed circumstances which warrant the removal of the disqualification. The court determines that they violate not only plaintiff's right to equal protection, but his right to substantive due process as well.

### A. *Former Mental Patients as a Quasi-Suspect Class*

The Supreme Court has expressly reserved judgment on the question of whether or not the mentally ill are deserving of heightened scrutiny. *Schweiker v. Wilson*, 450 U.S. 221, 229, 231 n. 13, 101 S.Ct. 1074, 1080, 1081 n. 13, 67 L.Ed.2d 186 (1981).[4]

---

**4.** The Court has recently granted *certiorari* on the question of whether the mentally retarded

are a "quasi-suspect" class entitled to enhanced scrutiny. *City of Cleburne v. Cleburne Living*

The Ninth Circuit has found former mental patients to be a "quasi-suspect" class entitled to "intermediate" scrutiny, however. *J.W. v. City of Tacoma,* 720 F.2d 1126 (9th Cir.1983). In *City of Tacoma,* the Ninth Circuit recognized that "constitutional concerns are heightened by any classification scheme singling out former mental patients for differential treatment because of the possibility that the scheme will implement "inaccurate and stereotypic fears" about former mental patients. *Id.* at 1130–31.

The Third Circuit has not spoken directly on this issue. In its recent decision, *Cospito v. Heckler,* 742 F.2d 72 (3d Cir.1984), the court applied a "rational basis" test in analyzing the claims of a group of mental patients who had lost certain federal benefits when the psychiatric hospital in which they were being treated lost its accreditation. The patients contended that "psychiatric hospitals will lose federal benefits more readily than a general hospital if deaccredited by JCAH [an accrediting agency], since such accreditation apparently does not affect in any way a *general* hospital's participation in Medicare or Medicaid ... whereas a psychiatric hospital must either be JCAH accredited, or else certified under the 'distinct part' survey in order to qualify," and that this amounted to discrimination against the mentally ill. *Id* at 83. In applying only minimal scrutiny, the Third Circuit carefully noted the Supreme Court's reservation of "the question of whether legislation *expressly* classifying mental patients as a discrete group must be examined under any enhanced standard of scrutiny," *Id.* n. 19 (emphasis supplied),

however. This court concludes from this note that the Third Circuit, like the Supreme Court, has reserved judgment on the question of what level of scrutiny to apply to legislation that explicitly singles out mental patients or those with a history of psychiatric hospitalizations for differential treatment. In the opinion of this court, the Third Circuit would not automatically apply a rational basis test if presented with these facts, particularly in light of the Ninth Circuit's holding in *Tacoma, supra* (striking down zoning regulation that treated group homes for former mental patients differently than other group homes).[5] This court is persuaded by the Ninth Circuit's holding that former mental patients do constitute a quasi-suspect class for fourteenth amendment purposes, but the court does not rest its decision on that ground.

### B. *Application of the Rational Basis Test*

■ The question of whether or not persons with a history of mental illness should be afforded enhanced scrutiny when singled out for differential treatment is not critical in this constitutional challenge to 18 U.S.C. § 921 *et seq.,* because, even under a rational basis test, this statute is defective under both equal protection and substantive due process theories.[6]

The court first notes its agreement with plaintiff's observation that the Supreme Court has not already decided this question in the *dicta* from *Dickerson v. New Banner Institute, Inc.,* 460 U.S. 103, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983), which is empha-

*Center,* —— U.S. ——, 105 S.Ct. 427, 83 L.Ed.2d 354 (1984); *see also* "Subject Matter Summary of Cases Recently Filed," 53 U.S.L.W. 3343–44 (Nov. 6, 1984).

5. Prior to *Schweiker,* in which the Supreme Court expressly reserved judgment on the standard of review for classifications of the mentally ill as a discrete group, the Third Circuit applied a rational basis test in evaluating the constitutionality of a state statute setting differential time limits for benefits for hospitalization in mental as opposed to general hospitals. *See Doe v. Colautti,* 592 F.2d 704 (3d Cir.1979). The court relied on the Supreme Court's summary affirmance in *Legion v. Weinberger,* 414 U.S.

1058, 94 S.Ct. 564, 38 L.Ed.2d 465 (1973), *aff'g Legion v. Richardson,* 354 F.Supp. 456 (S.D.N.Y. 1973) (three-judge court), in which the court below employed a rational basis test to uphold a limitation on the number of days of Medicaid and Medicare coverage for psychiatric as opposed to general hospitalizations for patients over 65. The explicit reservation of judgment in *Schweiker,* noted in *Cospito,* indicates that none of these cases supports the proposition that express classifications of individuals according to their history of psychiatric treatment are inevitably subject only to a rational basis analysis.

6. The parties have applied only a rational basis analysis.

sized by defendant. In that case, holding that a state court's expunction of a criminal conviction would not automatically release a convict of his firearm disability under 18 U.S.C. § 921 et seq., the Court stated that

> [t]he imposition, by §§ 922(g)(4) and (h)(4), of continuing disability on a person who "has been" adjudicated a mental defective or committed to a mental institution is particularly instructive. A person adjudicated as a mental defective may later be adjudged competent, and a person committed to a mental institution may later be deemed cured and released. Yet Congress made no exception for subsequent curative events. The past adjudication or commitment disqualifies. Congress obviously felt that such a person, though unfortunate, was too much of a risk to be allowed firearms privileges.... In the face of this fact, we cannot believe that Congress intended to have a person convicted of a firearms felony under state law become eligible for firearms automatically because of a state expunction for whatever reason.

Id. 103 S.Ct. at 993. In this passage, the Court referred to section 922's explicit treatment of persons with histories of psychiatric commitments simply in order to support its statutory interpretation of the import of an expunction under section 921 et seq. Possible constitutional infirmities in collateral clauses of the statute were not the focus of the Court. Significantly, as plaintiff has noted, the Court took special notice of the fact that "Congress carefully crafted a procedure for removing ... disabilities [of convicts] in appropriate cases,"

id. 103 S.Ct. at 995, and cited section 925(c), the very relief statute which the plaintiff has tried unsuccessfully to have applied to him. Arguably, the Court felt free to dwell solely on questions of statutory interpretation because of this "escape clause" in the statutory sections with which it was concerned. It is the absence of this procedure for escape from disability for former mental patients, particularly in light of its availability for convicts, that creates the constitutional infirmity with which we are concerned here.[7]

The failure of the statute to provide former mental patients with the opportunity to contest their firearm disability is irrational in two ways that offend the due process and equal protection components of the fifth amendment. First, the statute offends the equal protection rights of former mental patients by treating them differently than others similarly situated, viz, ex-convicts, without any logical justification for doing so. Second, the statute offends the due process rights of these individuals because it deprives them permanently and without any rational basis of the opportunity to demonstrate that they are no longer, or never were, incapable of handling firearms safely.

### 1. Equal Protection

Sub-sections (d)(4) and (h)(4) prohibit sales of firearms to, or purchases of firearms by, any person

> (1) who is under indictment for, or who has been convicted in any court of, a crime punishable for a term exceeding one year;
>
> (2) who is a fugitive from justice;

---

**7.** Defendant also cites a 1983 decision from the District of South Carolina as having considered this issue. *United States v. Jones,* 569 F.Supp. 395 (D.S.C.1983). Again, this court must note its agreement with the plaintiff that the *Jones* court did not address the procedural infirmity this court finds in the statute. In *Jones,* the defendant, a former mental patient, was not seeking to have her disability removed so that she could purchase a firearm; she was instead under indictment for having purchased a firearm *without* any release from the statutory disability, a purchase she had accomplished by falsifying information about her prior hospitalizations. Presented with those facts, the *Jones*

court found that it was not irrational "to prohibit persons within the category of 18 U.S.C. § 922(d)(4) from purchasing and/or receiving firearms." 569 F.Supp. at 399. This court does not disagree with that conclusion. But to conclude that it is rational to prohibit former mental patients in general from purchasing or receiving firearms is not to conclude that it is rational to deny individual former mental patients the opportunity to seek relief from this general disability with a showing that they are responsible enough to handle a firearm safely and legally, particularly when such an opportunity is afforded ex-convicts.

(3) who is an unlawful user of or addicted to marijuana or any depressant or stimulant drug ... or narcotic drug; or

(4) who has been adjudicated as a mental defective or who has been committed to any mental institution.

Of these, only ex-convicts and former psychiatric patients are classed according to a *past* occurrence in their lives which might raise a presumption that they would be incapable of handling firearms safely in the future. All of the other classes of individuals are subject to present infirmities which are obviously direct indications that they might not be trustworthy with weapons. The statutory scheme allows the subject of a past conviction to show his reformation, in section 925, but does not allow the same opportunity to the subjects of a past commitment proceeding. Thus, out of all of the categories of individuals disabled from purchasing firearms, only the former mental patients are permanently disabled on the basis of a past event that may or may not be an indicator of their present ability to handle firearms, with no opportunity to establish that, in fact, they are now capable of safe handling.[8]

There is no rational basis for thus singling out mental patients for permanent disabled status, particularly as compared to convicts. While, as noted below, this court objects to presumptively barring any individual based on a past event from the opportunity to prove that he or she should be released from disability, rational analysis suggests that, if anything, the bar would be more logically applied to convicts than to former mental patients, rather than vice versa. First, the bar has a punitive aspect which may be appropriate for one who has been duly convicted of a crime, but not for an innocent former mental pa-

tient. *See Plyler v. Doe, supra*, 457 U.S. at 220, 102 S.Ct. at 2396 ("legal burdens should bear some relationship to individual responsibility or wrongdoing"). Second, individuals who are convicts have demonstrated that they are capable of criminal activity by actually committing the crime for which they were convicted, *cf., Jones v. United States*, 463 U.S. 354, 103 S.Ct. 3043, 3049, 77 L.Ed.2d 694 (1983) ("[t]he fact that a person has been found, beyond a reasonable doubt, to have committed a criminal act certainly indicates dangerousness"); former mental patients have not, by virtue of that status, indicated anything more than that they at one time were adjudged to have a propensity for disruptive activity.[9] Third, the committed patient who is released, as was Galioto, shortly after his commitment, may not have the same incentive to appeal the commitment as a convicted felon, so the propriety of the initial commitment may never be fully explored. The initial commitment proceeding is likely to be much more emergent than a criminal proceeding as well, if the proceeding is begun only upon a patient's seventy-two-hour notice of intention to leave, pursuant to New Jersey Statute Annotated 30:4–46 (hospital must discharge voluntarily admitted patient within seventy-two hours of request to leave absent commitment). Moreover, the commitment proceeding is likely to have fewer procedural safeguards (e.g., no right to a jury, N.J.Stat.Ann. 30:4–42; "clear and convincing" burden of proof rather than "beyond a reasonable doubt"). This last point is particularly disturbing in light of the studies cited by plaintiff, Mem. at 12, to the effect that commitment proceedings are replete with erroneous factual findings.

---

**8.** Section 925(c) does exclude convicts whose past convictions were for firearms-related offenses from its relief provisions, but such past convictions might rationally be considered good indicators of a potential for future firearms abuse, in contrast to a mere general finding of mental illness in the past.

**9.** An individual may be committed in New Jersey if "there is believed to exist in the patient a diagnosed mental illness of such degree and character that the person, if discharged, will probably imperil life, person, or property." N.J. Stat.Ann. 30:4–48. Thus, one without violent tendencies toward people may be committed on the belief that he will likely "imperil ... property."

**690**

In sum, permanent disability is more appropriately accorded to convicts, if anyone, than to former mental patients. The only "rational" reason for failing to provide persons with psychiatric histories the opportunity to contest their disability must be based on some "archaic and stereotypic notions", *Tacoma,* 720 F.2d at 1129, *citing Mississippi Univ. for Women v. Hogan,* 458 U.S. 718, 723, 102 S.Ct. 3331, 3335, 73 L.Ed.2d 1090 (1982), that mental illness is always, in every instance, permanent and incurable. This ignores expanding knowledge about the causes of mental illnesses, their reversibility and treatment.

2. *Substantive Due Process*

■ The statute is unconstitutional not only because it treats former mental patients differently from and inferior to convicts, but also because it presumptively denies former mental patients the opportunity to establish that they no longer present the danger against which the statute was intended to guard. The statute in effect creates an irrebuttable presumption that one who has been committed, no matter the circumstances, is forever mentally ill and dangerous. An irrebuttable presumption violates the due process rights of the individual against whom it is applied unless it is "at least rationally related to a legitimate state objective." *Malmed v. Thornburgh,* 621 F.2d 565, 575, 578 (3d Cir.), *cert. denied,* 449 U.S. 955, 101 S.Ct. 361, 66 L.Ed.2d 219 (1980); *see also Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) (unconstitutional to presume that all unwed fathers are unfit as parents); *Gurmankin v. Costanzo,* 556 F.2d 184 (3d Cir.1977) (unconstitutional to presume blind teacher not competent to teach English in public schools). This court does not question that the regulation of purchases and sales of firearms for the safety of the public is a legitimate, indeed substantial, state objective. But the application of an irrebuttable presumption against ownership of firearms by former mental patients is not a rational means of achieving that objective. *Cf. Hetherton v. Sears, Roebuck & Co.,* 652 F.2d 1152 (3d

Cir.1981) ("[w]hile it may be true that [the state] could ban the sale of all deadly weapons, it does not follow that the state, having abrogated its power to effect a total ban," can regulate sale of weapons in an irrational manner).

The statute in question is irrational because, without any good faith extrinsic justification, such as administrative cost, it relies on psychiatric evidence introduced in one proceeding to impose a burden on an individual, and then refuses to accept the same evidence when the individual seeks to have the burden removed. At the outset, the court notes that the government has never questioned in this litigation the feasibility of affording relief proceedings to former mental patients. Indeed, given that the statutory scheme under examination here allows for relief from disability in cases involving convicts, the government cannot in good faith contend that its refusal to allow relief in the case of former mental patients is based on a concern over the expense of the relief procedure or its administrative feasibility. Neither does the relief procedure contemplated here implicate the concerns of repose and economy underlying the judicial principles of *res judicata* and collateral estoppel. The relief proceeding is not aimed at relitigating the issues litigated at the previous commitment hearing, but focuses on present circumstances, and on an ongoing civil disability independent of the original commitment.

Absent any rationale of economy or efficiency, the court can find no rationale for the statute but an archaic, stigmatizing, unreasoning fear of the mentally ill. As noted previously, "[l]egislation predicated on such prejudice is easily recognized as incompatible with the constitutional understanding that each person is to be judged individually." *Plyler,* 457 U.S. at 216 n. 14, 102 S.Ct. at 2394 n. 14. In plaintiff Galioto's case, the very physician who certified he should be committed, Dr. Alvarez, has now certified that Galioto is competent to handle a firearm. Indeed, the state courts that committed Galioto have now issued him a firearm identification card. Even if these events should not automatically relieve Galioto of his disability, *cf. Dickerson,*

*supra,* they indicate that Congress' concerns in creating the disability for certain higher risk firearm purchasers no longer obtain in Galioto's case. The statute, however, permanently forecloses Galioto from challenging that disability.

Even *the very evidence,* namely, psychiatric opinion, which was responsible for the stigmatic label in the first instance, cannot erase this mark. The court appreciates the "fallibility of psychiatric diagnosis", *Addington v. Texas,* 441 U.S. 418, 429, 99 S.Ct. 1804, 1811, 60 L.Ed.2d 323 (1979), and the fact that "some in the psychiatric community are of the view that clinical predictions as to whether a person would or would not commit violent acts in the future are 'fundamentally of very low reliability' and that psychiatrists possess no special qualifications for making such forecasts.'" *Estelle v. Smith,* 451 U.S. 454, 472, 101 S.Ct. 1866, 1878, 68 L.Ed.2d 359 (1981) (citations omitted). But the shortcomings of psychiatry cannot excuse the failure to afford a former mental patient a hearing on his current mental competence for the purpose of overcoming a civil disability, where the government has been satisfied to rely on psychiatric evidence in imposing the disability in the first instance. That failure amounts to a denial of due process.

## CONCLUSION

The court does not today find it irrational to prohibit former mental patients generally from the purchase of firearms. The court finds rather that such a general prohibition is irrational and unconstitutional, if it does not include some provision for the granting of relief from disability to former mental patients in appropriate cases. As the defendant has noted, this court does not have the power to "create a review procedure for people in plaintiff's category," Defendant's Reply Mem. at 9, because "[t]hat would be a legislative function." The court can only declare those provisions of 18 U.S.C. § 921 *et seq.* which have been used to deprive plaintiff of his ability to purchase a firearm, without affording him any opportunity to contest that disability, to be void as violative of the fifth amendment of the United States Constitution.

The court does not mean to suggest by this opinion that all former sufferers of mental illness should be permitted to own firearms. But, rather, if Congress has determined that there are circumstances under which former criminals can own and possess weapons and a means is provided to establish such entitlement, former mental patients are entitled to no less. To hold otherwise is to implicitly declare that mental illness is incurable and that all those who have once suffered from it forever remain a danger to society. Such a conclusion is repugnant to our principles and is contradicted by the multitude of such persons who now live among us without incident. The anguish caused by mental illness is great enough without the imprimatur of a lifetime stigma embossed by congressional action.

Because the holding of the court in this matter will create a void in an area which clearly requires governmental control and regulation, the court, on its own motion, will stay the effective date of its order for a period of 120 days, so as to afford to Congress an opportunity to correct the constitutional infirmities found to exist in the present legislation and to accord to former mental patients the rights, dignity and due process to which they are entitled.