OPINION OF THE COURT
Frank A. Gulotta, Jr., J.
The defendant, through his attorney, moves this court to dismiss the indictment against him herein or, in the alternative, for an order requiring the People to present its case to a new Grand Jury in the event that the defendant is found competent at a later time.
The defendant predicates his motion upon his counsel’s arguments that CPL 730.40 (3), which allows the People to present charges to a Grand Jury against a defendant whose mental competency is being examined pursuant to court order or against a defendant who has been adjudicated mentally incompetent, without affording such defendant an opportunity to testify before such Grand Jury, is constitutionally infirm under both the Federal and New York Constitutions on equal protection and due process grounds.
The Law
CPL 190.50 (5) provides, in relevant part:
“Although not called as a witness by the people or at the instance of the grand jury, a person has a right to be a witness in a grand jury proceeding under circumstances prescribed in this subdivision:
“(a) When a criminal charge against a person * * * has been submitted to a grand jury, such person has a right to appear before such grand jury as a witness in his own behalf if, prior to the filing of any indictment * * * he serves upon the district attorney of the county a written notice making such request and stating an address to which communications may be sent * * * In such case, the district attorney must notify the defen *335 dant or his attorney of the prospective or pending grand jury proceeding and accord the defendant a reasonable time to exercise his right to appear as a witness therein”.
CPL 730.40 (3) states: “When a local criminal court has issued an order of examination or a temporary order of observation, and when the charge or charges contained in the accusatory instrument are subsequently presented to a grand jury, such grand jury need not hear the defendant pursuant to section 190.50 unless, upon application by defendant to the superior court that impaneled such grand jury, the superior court determines that the defendant is not an incapacitated person.”
The Fourteenth Amendment to the United States Constitution provides, in relevant part: “Section 1 * * * nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.”
Article I, § 11 of the New York Constitution provides: “No person shall be denied the equal protection of the laws of this state or any subdivision thereof. No person shall, because of race, color, creed or religion, be subjected to any discrimination in his civil rights by any other person or by any firm, corporation, or institution, or by the state or any agency or subdivision of the state.”
Constitutional due process is divided into two classifications: substantive due process and procedural due process. Substantive due process deals with the denial of “Fundamental Rights”. Procedural due process deals with the denial of statutorily created entitlements and interests.
The Facts Herein
The defendant was arrested on September 5, 1996 at about 4:29 a.m. and charged under docket No. 27431/96 with burglary in the second degree in violation of Penal Law § 140.25. On September 5, 1996, the defendant was arraigned before the Honorable Anthony Parga and bail was fixed at $10,000 bond over $10,000 cash.
On September 5, 1996, the Legal Aid Society, as attorney for the defendant in the above-captioned matter, sent notice pursuant to CPL 190.50 (5) (a) to the District Attorney’s office that the defendant wished to testify in his own behalf at any Grand Jury proceeding.
On October 17, 1996, the Honorable George Peck ordered an examination pursuant to CPL 730.30 to determine if the defen *336 dant was competent to stand trial. On November 22, 1996, the Honorable Thomas Dwyer found the defendant incompetent to stand trial.
On January 21, 1997, the defendant appeared before this court. At that time, this court ordered another examination pursuant to CPL 730.30 to determine the defendant’s competence to stand trial.
On February 3, 1997, the People notified the Legal Aid Society by mail that the defendant’s case would be presented to the Nassau County Grand Jury on February 19, 1997.
On February 19, 1997, the defendant had the case brought before the Honorable Donald E. Belli and asked the court to order the People to hold presentation of the matter to the Grand Jury until February 27, 1997, so that the defendant’s competency status could be determined in order for counsel to make an intelligent decision as to whether the defendant should testify. Judge Belli ordered the People to hold a vote on the matter until February 24, 1997, at which time the court ordered that the results of the CPL 730.30 examination be expedited. Judge Belli adjourned the matter until February 24, 1997 for a decision as to the defendant’s competency.
On February 24, 1997, this court found that the defendant was incompetent to stand trial and, thus, an incapacitated person under the law. The defendant was subsequently denied his right to testify before the Grand Jury in accordance with CPL 190.50 (5) (a) pursuant to CPL 730.40 (3). On February 26, 1997, the Grand Jury indicted the defendant on one count of burglary in the second degree, Penal Law § 140.25 (2), under indictment No. 97843.
On March 10, 1997, the defendant was arraigned before this court under indictment No. 97843. This court continued the defendant’s bail status and once again found the defendant incompetent to stand trial at that time.
Conclusions of Law
Equal protection analysis must begin by determining the standard of review to be applied in a particular case. Equal protection case law in New York dealing with the mentally ill is very limited. New York courts essentially have followed Federal law on this subject. (Golden v Clark, 76 NY2d 618.)
Federal and New York courts have followed the general rule that legislation challenged on equal protection grounds will be upheld if the distinction created by the legislation is related *337 rationally to a legitimate government objective. This is known as the “rational relation” test. This rule, however, has not been followed where the legislation affects a “suspect class” or interferes in the exercise of a “Fundamental Right”. (See, Cleburne v Cleburne Living Ctr., 473 US 432; Golden v Clark, 76 NY2d 618, supra; Board of Educ. v Nyquist, 81 AD2d 217.)
Cases involving “suspect classes” or a “Fundamental Right” have been analyzed by using the “strict scrutiny” standard. Those involving what are termed “quasi-suspect classes” have applied the “intermediate scrutiny” test.
The United States Supreme Court has defined a “suspect class” as one “saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection” (San Antonio School Dist. v Rodriguez, 411 US 1, 28).
The United States Supreme Court has made it clear that the label of “suspect class” is not one that should be lightly imposed simply because a class has faced some discrimination and disadvantage. (Massachusetts Bd. of Retirement v Murgia, 427 US 307, 313.) A “suspect class”, according to the Supreme Court, is one that has been continuously subjected to unique disabilities on the “basis of stereotyped characteristics not truly indicative of their abilities.” (Massachusetts Bd. of Retirement v Murgia, supra, at 313.) Such a label has been applied to classes such as race, alienage and national origin, but not to the mentally incompetent. (See, Cleburne v Cleburne Living Ctr., supra, at 440.)
Although the mentally ill have been the victims of stereotypes, the disabilities imposed on them often have reflected that many of the mentally ill do have reduced ability for personal relations, for economic activity, and for political choice. This is not to say that the legal disabilities have precisely fit the actual incapacities of the mentally ill individuals whom the law has burdened, but it is important that the legal disabilities have been related, even if imperfectly, to real inabilities from which many of the mentally ill suffer.
While it is true that the mentally incompetent may be considered a minority group, such a classification in and of itself is insufficient to warrant classifying them a “suspect class”.
Further, the Federal courts consistently have refused to designate the mentally incompetent a “suspect class”. (Cleburne v *338 Cleburne Living Ctr., supra; Fetterusso v State of New York, 898 F2d 322 [2d Cir]; Cospito v Heckler, 742 F2d 72 [3d Cir]; J.W. v City of Tacoma, 720 F2d 1126 [9th Cir]; Doe v Colautti, 592 F2d 704 [3d Cir]; Martin v Voinovich, 840 F Supp 1175 [SD Ohio]; Galioto v Department of Treasury, 602 F Supp 682 [D NJ].)
The mentally incompetent do not have the indicia that has been required by courts for finding a class “suspect”. They are not saddled with disability to the point of being powerless or as to command extraordinary protection from the majority nor have they been subjected to a history of purposeful unequal treatment.
Because the mentally incompetent are not a “suspect class”, the “strict scrutiny” standard cannot be applied unless the legislation infringes upon a “Fundamental Right”.
“Fundamental Rights” are those explicitly or implicitly guaranteed by the Constitution. (See, San Antonio School Dist. v Rodriguez, supra.) Where a right is not expressly granted by the US Constitution, the United States Supreme Court has been hesitant to find such a right implied by the US Constitution. Such hesitancy belies the Court’s reluctance to rewrite the US Constitution and act as a super-Legislature. This court likewise lacks the propensity to legislate- from the Bench.
The right of one to testify before a Grand Jury is not expressly granted by the US Constitution. While such a right is certainly an important one, it is not implied by any of the provisions of the US Constitution. Nor does such a right resemble those rights pronounced by the Supreme Court as being implicit in the language of the US Constitution. Those rights found to be implied by the US Constitution go to the very manner in which one chooses to live. (See, e.g., Roe v Wade, 410 US 113 [right to privacy]; Bullock v Carter, 405 US 134 [right to vote]; Shapiro v Thompson, 394 US 618 [right to interstate travel].)
The fact that the right to testify before a Grand Jury is an important one does not mean that such a right is a “Fundamental Right”. The Rodriguez Court recognized that education was possibly the most significant function of government and essential to one’s status in life, yet held that even education was not a “Fundamental Right”. (San Antonio School Dist. v Rodriguez, supra, at 31.)
Just about every State law affects important rights, however, the importance of the right affected is not determinative of whether the right is a “Fundamental” one.
*339 The right to testify before a Grand Jury, while important, is not expressly conferred in the US Constitution nor is it among those rights designated as “Fundamental” by the Supreme Court. Accordingly, this court does not find it to be a “Fundamental Right”.
Because the mentally ill are not a “suspect class” and because the right to testify is not a “Fundamental Right”, a standard of “strict scrutiny” is not the appropriate standard of review for this case.
Some groups have been classified by the Federal courts as “quasi-suspect”, and courts have applied a standard of intermediate scrutiny in evaluating equal protection claims involving such groups.
Such groups include gender (Mississippi Univ. for Women v Hogan, 458 US 718) and illegitimacy (Matthews v Lucas, 427 US 495). These groups have not faced a history of purposeful discrimination to an extent warranting extraordinary protection, yet they have faced discrimination because of a characteristic beyond their control which has no relationship to their ability to contribute to society. (See, Cleburne v Cleburne Living Ctr., supra, at 441; Matthews v Lucas, supra, at 505.)
The class of people with mental disabilities, however, unlike classes such as gender and illegitimacy, possess a characteristic that is in fact related to their ability, or inability as the case may be, to perform and contribute to society. Those who are mentally incompetent are not fully equipped to perform and comprehend to an extent that allows them to contribute to society as others do. Therefore, while that does not change the fact that they have faced some discrimination, that discrimination is not as arbitrary and purposeful as that which groups that have been accorded “suspect” or “quasi-suspect” status by the courts have faced.
Further, while it is true that some courts have applied “quasi-suspect” status to mental incompetents (see, e.g., J.W. v City of Tacoma, supra; Martin v Voinovich, supra; Galioto v Department of Treasury, supra), a number of courts have refused to attach such status to mental incompetents, including New York’s Second Circuit. (Fetterusso v State of New York, supra; Cospito v Heckler, supra; Doe v Colautti, supra.)
In addition, the United States Supreme Court, in Cleburne (supra), held that mental retardation was not a “quasi-suspect” classification requiring strict scrutiny review. In using a rational basis standard of review, the Court implied that such *340 a standard of review also would apply to the mentally ill. The Court expressed concern that if the mentally retarded were given a heightened standard of review, then such status would have to be applied to every group with a disability. The Court stated: “One need mention in this respect only the aging, the disabled, the mentally ill, and the infirm. We are reluctant to set out on that course, and we decline to do so.” (Cleburne v Cleburne Living Ctr., supra, at 445-446 [emphasis added].) The Court therefore implied that mentally ill individuals should not be treated with a heightened standard of review.
This court finds the reasoning of the Second Circuit in Fetterusso (supra) and the United States Supreme Court in Cleburne (supra) the most persuasive. Accordingly, the mentally incompetent will not be extended “quasi-suspect” status by this court. Therefore, in the matter now before this court, the “rational relation” test will be applied.
The rational basis “review in Equal Protection analysis ‘is not a license for courts to judge the wisdom, fairness, or logic of legislative choices.’ ” (Heller v Doe, 509 US 312, 319, citing FCC v Beach Communications, 508 US 307, 313.) It does not authorize the judiciary to sit as a super-Legislature to judge the wisdom of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines. (New Orleans v Dukes, 427 US 297.) Further, legislation which neither involves a fundamental right nor proceeds along suspect lines is accorded a strong presumption of validity. (Massachusetts Bd. of Retirement v Murgia, supra.) Such legislation cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose. (Nordlinger v Hahn, 505 US 1.) Such legislation must be upheld if there is any reasonably conceivable state of facts that could provide a rational basis for its promulgation. (Nordlinger v Hahn, supra.)
The People have proffered more than adequate justifications for the legislation in question, i.e., the reduction of unnecessary delay to the system, the indefinite delay which might be caused should the People have to wait for a defendant to be found competent before indictment, and the possibility of the loss of material witnesses or their memory lapses which might be occasioned by such delay.
Accordingly, this court finds that CPL 730.40 (3) is not violative of the Equal Protection Clause of either the New York or Federal Constitution.
*341 Defendant further challenges CPL 730.40 (3) on the grounds that it violates the Due Process Clauses of the Federal and New York Constitutions.
There are two kinds of due process recognized by Federal and State courts. First, there is substantive due process, which only deals with “Fundamental Rights”. (Michael H. v Gerald D., 491 US 110.) For reasons stated earlier, the right to testify before a Grand Jury is not fundamental. Accordingly, there can lie no violation under substantive due process.
The second type of due process is procedural due process. This is where a law creates an entitlement and a protected interest in something and the government seeks to interfere with that interest without due process of law. (Zinermon v Burch, 494 US 113.)
In Mathews v Eldridge (424 US 319), the Supreme Court set out the following factors to evaluate whether a law interfering with a protected interest violates due process: (1) the private interest affected; (2) the risk of erroneous deprivation; and (3) the government interest. Applying these factors to the statute at hand, it is clear that CPL 730.40 (3) does not violate due process.
A person’s right to testify on his own behalf before a Grand Jury was an interest created by statute and, although not a fundamental right, it is clearly an important right. The risk of erroneous deprivation, however, is low and there are alternative safeguards. When an original temporary order of examination is issued by a Judge, the defendant is immediately at that point sent for psychiatric examination. If the defendant is found fit to proceed, he will be permitted to testify once the temporary order of examination is vacated.
There is also a procedural safeguard to prevent a situation in which a temporary order of examination is ordered and the case is presented to a Grand Jury before the issue of competency is resolved. The statute specifically provides that under those circumstances, the defendant may make application to the court that impaneled said Grand Jury challenging his incompetency. If found competent by said court, the defendant will then be afforded the opportunity to testify before such Grand Jury. This procedural safeguard, allowing defendant to make an application to the court before the Grand Jury presentation is concluded, protects individuals from improperly being denied the right to testify because of an erroneous assumption that defendant is incompetent.
In addition, the courts have wide discretion in dismissing an indictment and ordering its re-presentment where the prosecu *342 tion of such indictment would result in an injustice. (CPL 210.40 [1]; People v Calvert, 167 Misc 2d 823; People v Searles, 79 Misc 2d 850.)
Finally, the governmental interests that the statute serves, set out more specifically above, certainly are important and legitimate. Although one’s right to testify before a Grand Jury is an important one, the governmental interest involved and the procedural safeguards contained in the statute adequately afford procedural due process.
This court also finds defendant’s request for alternative relief premature. Defendant’s request for dismissal and re-presentment is more properly made when and if he is found competent.
Accordingly, defendant’s motion is denied in all respects.