IMMIGRATION AND NATURALIZATION SERVICE ET AL. *v.* LEGALIZATION ASSISTANCE PROJECT OF THE LOS ANGELES COUNTY FEDERATION OF LABOR ET AL.

No. A–426.   Decided November 26, 1993

JUSTICE O'CONNOR, Circuit Justice.

The Solicitor General, on behalf of the Immigration and Naturalization Service (INS), requests that I stay an order of the District Court for the Western District of Washington pending appeal to the Court of Appeals for the Ninth Circuit. The Court of Appeals has rejected the INS' application for such a stay. Though "stay application[s] to a Circuit Justice on a matter before a court of appeals [are] rarely granted," *Heckler* v. *Lopez,* 463 U. S. 1328, 1330 (1983) (REHNQUIST, J., in chambers) (internal quotation marks omitted), I believe this is an exceptional case in which such a stay is proper.

## I

In 1986, Congress enacted the Immigration Reform and Control Act of 1986 (IRCA), 100 Stat. 3359, which provided a limited amnesty for immigrants who had come to or stayed in the country illegally. See 8 U. S. C. § 1255a. Not all such immigrants were, however, eligible. Among other restrictions, the amnesty was available only to those who had "resided continuously in the United States in an unlawful status since [January 1, 1982]," § 1255a(a)(2)(A); also, those who came to the country legally but stayed illegally could only get amnesty if their "period of authorized stay . . . expired before [January 1, 1982,]" or their "unlawful status was known to the Government as of [January 1, 1982]," § 1255a(a)(2)(B). Respondents, organizations that provide legal help to immigrants, believe the INS interpreted these provisions too narrowly, in violation of the statute and the United States Constitution, and in 1988 brought their challenge to court.

In March 1989, the District Court ruled in respondents' favor, and in September 1992, the Ninth Circuit affirmed in part, reversed in part, and remanded to the District Court for further proceedings. On June 1, 1993, the District Court issued an order requiring the INS to, among other things, identify and adjudicate legalization applications filed by

certain categories of applicants, not arrest or deport certain classes of immigrants, and temporarily grant certain classes of immigrants stays of deportation and employment authorizations.

On June 18, 1993, this Court decided *Reno* v. *Catholic Social Services, Inc.*, 509 U. S. 43 (1993) *(CSS)*, a case involving a very similar challenge to another portion of IRCA. In *CSS*, we held that the claims of most of the plaintiff aliens were barred by the ripeness doctrine. A federal court, we held, generally ought not entertain a request for an injunction or declaratory judgment regarding the validity of an administrative regulation unless it is brought by someone who has actually been concretely affected by the regulation. *Id.*, at 57–58. The mere existence of the regulation, we held, was not enough; rather, the regulation must actually have been applied to the plaintiff. *Ibid.* We concluded that the only people who could ask for injunctive or declaratory relief under IRCA were those who were told by the INS that they should not even bother to file their applications—a policy called "front-desking"—and perhaps also those who could show that the front-desking policy was a substantial cause of their failure to apply in the first place. *Id.*, at 61–67, and n. 28. Under the statute, aliens who did apply and whose applications were considered but rejected could only get judicial review of this rejection if the INS tried to deport them. 8 U. S. C. § 1255a(f)(1).

In light of our decision in *CSS*, the Government asked the District Court to vacate its order, on the theory that respondents' claims here, like the claims of the *CSS* plaintiffs, were not ripe. The District Court, however, disagreed. The *CSS* plaintiffs, the District Court pointed out, were individual aliens, whereas the plaintiffs in this case are organizations. The District Court concluded that the organizations had "suffered a concrete and demonstrable injury" because "the challenged regulations drained organizational resources and impaired their ability to assist and counsel nonimmi-

grants"; therefore, the court held, the organizations' claims were ripe. App. B to Application 6, citing *Legalization Assistance Project of Los Angeles County Federation of Labor v. INS*, 976 F. 2d 1198, 1204 (CA9 1992), cert. pending, No. 93–73. Therefore, "because this case has assumed the posture of a broad-based challenge to the regulations in question by organizations which the Ninth Circuit explicitly found have standing to bring these claims," App. B to Application 6, the court declined to vacate its June 1 order.

II

As a Circuit Justice dealing with an application like this, I must try to predict whether four Justices would vote to grant certiorari should the Court of Appeals affirm the District Court order without modification; try to predict whether the Court would then set the order aside; and balance the so-called "stay equities." *Heckler* v. *Lopez*, *supra*, at 1330–1331. This is always a difficult and speculative inquiry, but in this case it leads me to conclude that a stay is warranted.

Respondents assert that the INS is violating the law of the land, and they ask the federal courts to order the INS to stop this. But the broad power to "take Care that the Laws be faithfully executed" is conspicuously not granted to us by the Constitution. Rather, it is given to the President of the United States, see U. S. Const., Art. II, §3, along with the power to supervise the conduct of the Executive Branch, Art. II, §§1, 2, which includes the INS. The federal courts are granted a different sort of power—the power to adjudge "Cases" or "Controversies," Art. III, §2, cl. 1, within the jurisdiction defined by Congress, Art. III, §2, cl. 2.

Congress has in fact considered the proper scope of federal court jurisdiction to review administrative agency actions. It has explicitly limited such review to claims brought by "person[s] suffering legal wrong[s] because of agency action" (not applicable to the respondent organizations involved

here) or by persons "adversely affected or aggrieved by agency action *within the meaning of a relevant statute.*" 5 U. S. C. § 702 (emphasis added). We have consistently interpreted this latter clause to permit review only in cases brought by a person whose putative injuries are "within the 'zone of interests' sought to be protected by the statutory provision whose violation forms the legal basis for his complaint." *Lujan* v. *National Wildlife Federation,* 497 U. S. 871, 883 (1990) *(NWF);* see also *Clarke* v. *Securities Industry Assn.,* 479 U. S. 388, 396–397 (1987).

I believe that, were it presented with this question, this Court would grant certiorari and conclude that the respondents are outside the zone of interests IRCA seeks to protect, and that therefore they had no standing to seek the order entered by the District Court. The District Court's decision and the Court of Appeals decision on which it relies, 976 F. 2d, at 1208, conflict with *Ayuda, Inc.* v. *Reno,* 7 F. 3d 246 (CADC 1993), and relate to an important question of federal law. See this Court's Rule 10. Moreover, on the merits, IRCA was clearly meant to protect the interests of undocumented aliens, not the interests of organizations such as respondents. Though such organizations did play a role in the IRCA scheme—during the amnesty period, they were so-called "qualified designated entities," which were to "assis[t] in the program of legalization provided under this section," § 1255a(c)(2)—there is no indication that IRCA was in any way addressed to their interests. The fact that the INS regulation may affect the way an organization allocates its resources—or, for that matter, the way an employer who currently employs illegal aliens or a landlord who currently rents to illegal aliens allocates its resources—does not give standing to an entity which is not within the zone of interests the statute meant to protect. *NWF, supra,* at 883.

The balance of equities also tips in the INS' favor. The order would impose a considerable administrative burden on the INS, and would delay the deportation of—and require

the granting of interim work authorizations to—at least those aliens who are deportable and who could not seek relief on their own behalf under *CSS*. Moreover, if the above analysis is correct, the order is not merely an erroneous adjudication of a lawsuit between private litigants, but an improper intrusion by a federal court into the workings of a coordinate branch of the Government. See *Heckler* v. *Lopez*, 463 U. S., at 1336–1337; *FCC* v. *Pottsville Broadcasting Co.*, 309 U. S. 134, 141 (1940). On the other hand, neither *CSS* nor this stay prevents those aliens who were ordered deported or were front-desked, and are therefore possibly eligible for relief under *CSS*, from suing in their own right. Likewise, neither *CSS* nor this stay prevents any membership organizations which have members whose claims are ripe under *CSS* from suing on behalf of those members, assuming the organizations meet the criteria required for organizational standing.

I therefore grant the application to stay the District Court's order pending final disposition of the appeal by the Court of Appeals.