UNITED STATES of America, Plaintiff,

v.

Keooudone PHETCHANPHONE.

No. 94–CR–67S.

United States District Court,
D. Utah,
Central Division.

Sept. 30, 1994.

Richard N.W. Lambert, Asst. U.S. Atty., U.S. Attys. Office, Salt Lake City, UT, for plaintiff.

Robert M. Archuleta, Salt Lake City, UT, for defendant.

## ORDER

SAM, District Judge.

The defendant, Keooudone Phetchanphone, made a motion to dismiss the indictment. The matter was referred to the magistrate judge under 28 U.S.C. § 636(b)(1)(B). The magistrate judge made two reports and recommendations that the motion be denied. No objection has been taken to the reports and recommendations. The court has reviewed the file and hereby adopts the reports and recommendations of the magistrate judge. Therefore,

IT IS HEREBY ORDERED that the motion of defendant Keooudone Phetchanphone to dismiss the indictment is denied.

## REPORT & RECOMMENDATION

BOYCE, United States Magistrate Judge.

The defendant, Keooudone Phetchanphone, made a motion to dismiss the indictment against him charging him with a violation of 18 U.S.C. § 922(g), felon in possession of a firearm. The magistrate judge made a report and recommendation on June 22, 1994 that the defendant's motion be denied. The original motion of defendant to dismiss was based on a claim that defendant's civil rights had been restored within the meaning of 18 U.S.C. § 921(a)(20) and that defendant could lawfully possess a firearm without violating 18 U.S.C. § 922(g). The report and recommendation concluded there had been no restoration of rights because defendant did not meet the requisite standards for restoration of rights set forth in *United States v. Maines,* 20 F.3d 1102 (10th Cir.1994) (File Entry # 21).

On July 6, 1994 the defendant and the prosecution made a joint motion to the district court to recommit the case to the magistrate judge. (File Entry # 22). The joint motion suggested that because the defendant was a resident alien and could not qualify for the restoration of rights provision under 18 U.S.C. § 921(a)(20), which may determine whether an offense has been committed within 18 U.S.C. § 922(g), that § 921(a)(20) law was being unconstitutionally applied to the defendant in violation of the equal protection portion of the due process clause of the Fifth Amendment.

The case was recommitted to the magistrate judge on July 5, 1994. (File Entry # 23). The case has been referred to the magistrate judge under 28 U.S.C. § 636(b)(1)(B). This report and recommendation is submitted on the defendant's motion to dismiss. On July 8, 1994 the defendant made a motion for reconsideration of dismissal of the indictment. (File Entry # 24). The motion recited as a basis for relief that 18 U.S.C. § 922(g)(1) is unconstitutional as applied to defendant. The defendant observes that 18 U.S.C. § 922(g)(1) prohibits a person convicted of a crime punishable in excess of one year from possessing a firearm. However, § 921(a)(20) excludes from the prohibited conduct a conviction of a person whose civil rights have been restored. The defendant contends he is denied the restoration of rights benefit of 18 U.S.C. § 921(a)(20) because of the provisions of Utah law and he is, therefore, denied equal protection of the law.

The defendant argues that "all resident aliens who are felons, regardless of the jurisdiction of their convictions, are subject to treatment unequal to that received by similarly situated citizens who are felons." (File Entry # 24, p. 4). The defendant has offered no proof that "all resident aliens" in all jurisdictions are ineligible for the restoration of rights exclusion under § 921(a)(20). Further, the prior report of the magistrate judge noted that in *United States v. Hall*, 20 F.3d 1066 (10th Cir.,1994) and *United States v. Maines*, 20 F.3d 1102 (10th Cir.,1994) it had been concluded that state law determines the question of whether there has been a restoration of rights. Therefore, before it could be such that "all resident aliens" were denied the benefit of the restoration of rights provision, it would have to be shown that such is the applicable circumstance in all fifty states. Nothing in the wording in 18 U.S.C. § 922(g) or § 921(a)(20) expressly, or by other specific classification, prohibits resident aliens from being eligible for the restoration of rights provision. Further, it must be observed that 18 U.S.C. § 921(a)(20) does not limit the relief afforded by that section only to persons in instances in which civil rights have been restored, but also recognizes alternative circumstances—pardon or expungement.[1] The defendant did not pursue either of the mentioned alternatives.

■ In order for the defendant to prevail he may not show discrimination against someone else. He must base his claim on his own legal injury. *U.S. v. Vigil*, 743 F.2d 751 (10th Cir.,1984). The Supreme Court in *Broadrick v. Oklahoma*, 413 U.S. 601, 610, 93 S.Ct. 2908, 2914, 37 L.Ed.2d 830 (1973) said:

"Embedded in the traditional rules governing constitutional adjudication is the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court." (citing cases)

A federal court will not entertain hypothetical questions not applicable to the defendant.

In *U.S. v. Mendes*, 912 F.2d 434 (10th Cir.,1990) the court said:

"Two more recent Supreme Court decisions, *County Court of Ulster County v. Allen*, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979), and *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973), elaborate on the principle stated in [*U.S. v.*] *Raines* [, 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960) ]. The *Allen* Court stated: 'A party has standing to challenge the constitutionality of a statute only insofar as it has an adverse impact on his own rights. As a general rule, if there is no constitutional defect in the application of the statute to a litigant, he does not have standing to argue that it would be unconstitutional if applied to third parties in hypothetical situations. A limited exception has been recognized for statutes that broadly prohibit speech protected by the First Amendment.'"

See also *Brecheisen v. Mondragon*, 833 F.2d 238 (10th Cir.,1987) and *I.N.S. v. Legalization Assistance Project of Los Angeles County Federation of Labor*, — U.S. —, 114 S.Ct. 422, 126 L.Ed.2d 410 (1993).

■ Consequently, the question is whether this defendant, as a resident alien, has been denied some federal constitutional right by the application of statute. In this case, because whether a violation of 18 U.S.C. § 922(g) has occurred involves a question of state law under 18 U.S.C. § 921(a)(20), the issue is whether defendant is denied equal protection as a resident of the State of Utah against other Utah residents. See *Allen v. Wright*, 468 U.S. 737, 755, 104 S.Ct. 3315, 3326, 82 L.Ed.2d 556 (1984) ("Standing exists as to persons who are personally denied equal treatment.")

The defendant properly argues that the Fifth Amendment embodies the equal protection concept of the Fourteenth Amendment. *Lewis v. U.S.*, 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980); *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976); *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638

---

1. Utah law authorizes expungement of felony convictions. Utah Code Ann. § 77–18–2. There is no evidence that defendant availed himself of this form of relief from his conviction. There is no restriction as to alienage for eligibility for expungement in Utah.

n. 2, 95 S.Ct. 1225, 1228 n. 2, 43 L.Ed.2d 514 (1975); *Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954); *U.S. v. Phelps,* 17 F.3d 1334, 1342, n. 2 (10th Cir.,1994); *U.S. v. Austin,* 981 F.2d 1163, 1166 (10th Cir.,1992). However, this does not mean that the same equal protection standards apply to the federal government as may be applicable to a state. The Congress, because of its defined powers, may make classifications in certain areas that would not be allowed to the states. Specifically in the area of alienage, the federal government may make distinctions and classifications not sanctioned under state authority. *Hampton v. Mow Sun Wong,* 426 U.S. 88, 96, 96 S.Ct. 1895, 1902, 48 L.Ed.2d 495 (1976) ("... the Fourteenth Amendment's restrictions on State power are not directly applicable to the federal government ..."); *Mathews v. Diaz,* 426 U.S. 67, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976) ("The fact that all persons, aliens and citizens alike, are protected by the Due Process Clause does not lead to further conclusion that all aliens are entitled to enjoy all the advantages of citizenship or, indeed, to the conclusion that all aliens must be placed in a single homogenous legal classification." "... The fact that an Act of Congress treats aliens differently from citizens does not itself imply that such disparate treatment is 'invidious'.")

The restrictions that may be imposed on aliens by a state are limited. *Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886); *Graham v. Richardson,* 403 U.S. 365, 372–73, 91 S.Ct. 1848, 1852, 29 L.Ed.2d 534 (1971). However Congress has constitutional authority over immigration that affords greater authority to make alienage classifications. *Fiallo v. Bell,* 430 U.S. 787, 792, 97 S.Ct. 1473, 1477, 52 L.Ed.2d 50 (1977) ("'Over no conceivable subject is the legislative power of Congress more complete than it is' over the administration of aliens.") Referencing *Oceanic Steam Nav. Co. v. Stranahan,* 214 U.S. 320, 339, 29 S.Ct. 671, 676, 53 L.Ed. 1013 (1909). Aliens "in several respects stand on equal footing with citizens

... [it is a] matter of permission and tolerance." *Harisiades v. Shaughnessy,* 342 U.S. 580, 586–87, 72 S.Ct. 512, 517, 96 L.Ed. 586 (1952). Recently in *Plyler v. Doe,* 457 U.S. 202, 219, n. 19, 102 S.Ct. 2382, 2395, n. 19, 72 L.Ed.2d 786 (1982) the Court said:

"With respect to the actions of the Federal Government, alienage classifications may be intimately related to the conduct of foreign policy, to the federal prerogative to control access to the United States, and to the plenary federal power to determine who has sufficiently manifested his allegiance to become a citizen of the Nation. No State may independently exercise a like power."

See also *Scaperland. Justice Thurgood Marshall and the Legacy of Dissent in Federal Alienage Cases,* 8 Georgetown Immigration Law Jail, 1, 2–4 (1994); *Constitution of the United States Analysis and Interpretation,* p. 1297 (Library of Congress 1987).[2] In *Bassett v. U.S. Immigration and Naturalization Service,* 581 F.2d 1385, 1387 (10th Cir.,1978) the court said as to the federal power in regard to aliens, quoting from *Galvan v. Press,* 347 U.S. 522, 530–531, 74 S.Ct. 737, 742, 98 L.Ed. 911 (1954):

"... that the formulations of these policies is entrusted exclusively to Congress has become about as firmly embedded in the legislative and judicial tissues of our body politic as any aspect of our government." Accord *Lopez v. United States I.N.S.,* 758 F.3d 1390, 1392 (10th Cir.1985). Therefore, it must be concluded that Congress has acknowledged authority to treat the status of aliens and its power is greater than that of state legislative authority.

The defendant asserts a classification based on alienage is inherently suspect, relying on *Bernal v. Fainter,* 467 U.S. 216, 219, n. 5, 104 S.Ct. 2312, 2315, n. 5, 81 L.Ed.2d 175 (1984). The statement is a serious overgeneralization and incorrect in the present context. *Bernal* dealt with state law and not a federal statute. The referenced quote from *Bernal* was from *Graham v. Richardson,* 403 U.S. 365, 372, 91 S.Ct. 1848, 1852, 29

2. It should be kept in mind that alienage is a different concept than national origin. *United States v. Restrepo,* 802 F.Supp. 781, 785 (D.E.D.N.Y.1992). The power to classify on the basis of national origin is much more limited.

L.Ed.2d 534 (1971) which referred to the power of states to classify on the basis of when alienage among persons eligible for the receipt of welfare benefits. The statement in *Bernal* is inapplicable to some categories of Congressional authority. In *Bernal*, the court said "As a general matter a *State* law that discriminates on the basis of alienage can be sustained only if it can withstand strict judicial scrutiny." *Id.*, at p. 219, 104 S.Ct. at 2315 (emphasis added). Further, *Bernal* dealt with a state law excluding aliens from acting as notaries. In other more significant areas of the state political structure exclusion of aliens has been consistently upheld. In *Bernal* the court said an exception to the strict scrutiny standard applicable to States exists for "political functions." A state may exclude aliens from important public offices; police, *Foley v. Connelie*, 435 U.S. 291, 98 S.Ct. 1067, 55 L.Ed.2d 287 (1978); teachers, *Ambach v. Norwick*, 441 U.S. 68, 99 S.Ct. 1589, 60 L.Ed.2d 49 (1979); probation officers, *Cabell v. Chavez–Salido*, 454 U.S. 432, 102 S.Ct. 735, 70 L.Ed.2d 677 (1982); elective public office, but not civil service.[3] *Sugarman v. Dougall*, 413 U.S. 634, 647, 93 S.Ct. 2842, 2850, 37 L.Ed.2d 853 (1973); jury service, *Perkins v. Smith*, 370 F.Supp. 134 (D.Md.1974) (3 judge court) aff'd 426 U.S. 913, 96 S.Ct. 2616, 49 L.Ed.2d 368 (1976); voting *Skafte v. Rorex*, 430 U.S. 961, 97 S.Ct. 1638, 52 L.Ed.2d 352 (1977) (app. dismissed for want of substantial federal question).[4] Therefore, the State of Utah could constitutionally exclude aliens from activities which the court in *Maines*, supra., said was essential to find an exclusion under § 921(a)(20). Congress could therefore use this as a rational basis for defining the crime of prohibiting the possession of a firearm by a felon under 18 U.S.C. § 922(g) without offending any legitimate factor of differentiation between alien and citizen.

The rational standard has been the traditional basis for a lawful classification in criminal matters not involving racial or other like categories. *Hurtado v. U.S.*, 410 U.S. 578, 93 S.Ct. 1157, 35 L.Ed.2d 508 (1973); *Marshall v. United States*, 414 U.S. 417, 94 S.Ct. 700, 38 L.Ed.2d 618 (1974); *U.S. v. MacCollom*, 426 U.S. 317, 96 S.Ct. 2086, 48 L.Ed.2d 666 (1976). See also *Tigner v. State of Texas*, 310 U.S. 141, 60 S.Ct. 879, 84 L.Ed. 1124 (1940); *Estelle v. Dorrough*, 420 U.S. 534, 95 S.Ct. 1173, 43 L.Ed.2d 377 (1975); *McGinnis v. Royster*, 410 U.S. 263, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973); *Michael M. v. Superior Court of Sonoma County*, 450 U.S. 464, 101 S.Ct. 1200, 67 L.Ed.2d 437 (1981); *United States v. Henry*, 504 F.2d 1335 (10th Cir. 1974) (Statute prohibiting possession of a firearm by a felon has a reasonable basis for its restriction); *United States v. Hernandez*, 913 F.2d 1506 (10th Cir.1990) (restriction on gun possession by an illegal alien).

■ The reasonable or rational bases standard is the classification generally applicable for congressional action with regard to matters of alienage. See note on *Georgetown Immigration*, L.Inl., 845, 858 (1993). In *Mathews v. Diaz*, 426 U.S. 67, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976) the court referred to the standard of assessing congressional action in regard to aliens as to whether the classification is arguably related to a federal interest. The court held Congress could condition an alien's participation in a federal medical insurance program on continuous residence. In *Reno v. Flores*, —— U.S. ——, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993) the Court upheld the detention of children of illegal aliens finding the government actions met a standard of "rationality" and there was a "reasonable fit" between the governmental regulations and the applicable statute.

■ In Rotunda and Nowak, *Treatise or Constitutional Law, Substance and Procedure* § 18.12 it is observed at p. 235–236: "As we have seen, the Court employs different standards of review for different types of alienage cases. When a state or local government distributes economic benefits on the basis of United States citizenship, the classification will be deemed "sus-

---

3. The Constitution makes citizenship a prerequisite to hold the office of President or a member of Congress. Art. II, 1,2,3.

4. As noted in the prior report and recommendation, the Supreme Court has upheld a state exclusion of aliens from possession firearms in certain instances. *Patsone v. Pennsylvania*, 232 U.S. 138, 34 S.Ct. 281, 58 L.Ed. 539 (1914).

pect" and subject to heightened judicial scrutiny and some form of the compelling interest test. When the State seeks to allocate political power, including the opportunity to hold important government positions, it will be able to do so whenever a majority of the justices believe that the law is reasonably tailored to further a legitimate political end. When the federal government employs an alienage classification, the Court will invoke only the rational basis test and defer to Congressional judgment over the dispensation of either economic benefits or political rights on the basis of citizenship."

Consequently, the question for resolution is whether there is any rational basis for Congress' structure of § 921(a)(20). It is rational to prevent a convicted felon from possessing a firearm unless his rights have been restored or the conviction pardoned or expunged. It is rational to consider state law as to when restoration of rights has occurred. An alien may not have rights restored under State law but can still pursue expungement or pardon or like process that is workable in the State, such as that available to the defendant under Utah law. Since defendant did not pursue that remedy, he is not in a position to claim the lack of rationality of § 921(a)(20). The restoration of rights language in § 921(a)(20) cannot be isolated from the other procedures that Congress was willing to employ. Restoration of rights is just one form of State process that could make lawful the possession of a weapon by a convicted felon. Expungement and pardon are also available.

In addition, it must be kept in mind that § 921(a)(20) makes *no* classification based on alienage. Any impact on an alien is indirect and only based on the incidental impact of state law. When there is a neutral classification that has a discriminatory impact on class "a discriminatory purpose" must be shown. *Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976); *Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977); *Personnel Adm'r of Massachusetts v. Feeney,* 442 U.S. 256, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979). In *Feeney,* the Court stated that a "discriminatory purpose ... implies more than intent as volition or intent as awareness of consequences ... it implies that the discriminator ... selected or reproved a particular course of action at least in part 'because of' not merely 'in spite of' its adverse effects on an identifiable group." 442 U.S. at 279, 99 S.Ct. at 2296. Therefore, a mere obvious disparate impact will not suffice for an equal protection claim. In *United States v. Easter,* 981 F.2d 1549 (10th Cir.1992) the defendant contended certain provisions of the United States Sentencing Guidelines (USSG) violated equal protection of the law because of a disproportionate impact on blacks. Citing to *Feeney,* the Court said defendant had to show a discriminatory purpose. *Id.,* 981 F.2d at p. 1559. Otherwise the rational basis test of *Washington v. Davis,* supra., applied. Accord, *U.S. v. Thurmond,* 7 F.3d 947, 952 (10th Cir.1993); *U.S. v. Angulo–Lopez,* 7 F.3d 1506, 1509 (10th Cir.1993). See also *McCleskey v. Kemp,* 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987) (Criminal defendant has the burden of proving the existence of purposeful discrimination in order to sustain an equal protection claim); *Andrews v. Shulsen,* 600 F.Supp. 408 (D.Utah 1984) aff'd 802 F.2d 1256 (10th Cir.) (same).

Defendant has offered no evidence or argument to support any discriminatory motive behind 18 U.S.C. § 921(a)(20). Consequently, the standard for assessing the constitutionality of 18 U.S.C. § 921(a)(20) is that of whether Congress had a rational basis for its action. As noted before, it did. The whole class of procedures available to a defendant that eliminate a violation of § 922(g) is rational.

The defendant places strong emphasis on the decision in *Galioto v. Department of Treasury, Bureau of Alcohol, Tobacco and Firearms,* 602 F.Supp. 682 (D.N.J.1985) vacated as moot, 477 U.S. 556 (1986) for the defendant's equal protection claim. That case does not support the defendant's claim in this case. First, the statute involved a specific provision of federal law, 18 U.S.C. § 922(d)(4), that prohibited the sale of a gun to a person who had previously been hospitalized for mental illness. The disadvantage

was perpetual. In this case, the statute involved contains no specific disqualification based on alienage. Also, Utah law afforded the defendant an opportunity to have the right to have his conviction expunged or pardoned which would operate under 18 U.S.C. § 921(a)(20) to eliminate defendant from the sanction of 18 U.S.C. § 922(g). Second, the *Galioto* case was vacated because Congress had amended 18 U.S.C. § 925(c) to strike the limiting language of that section and allow any "person who is prohibited from possessing ... firearms ... [to] make application to the [Secretary of the Treasury] for relief from the disabilities imposed by Federal laws with respect to ... possession of firearms ..." In this case, the Secretary of the Treasury might have granted defendant such relief if the defendant had applied. See *Thompson v. Dereta,* 549 F.Supp. 297 (D.Utah 1982). The amendment to § 925(c) mooted the *Galioto* case and the premise and reasoning on which it was based. When 18 U.S.C. § 925(c) was changed, a remedy then existed for any effected person and the rationale of *Galioto* no longer had relevance. See *State v. Owenby,* 111 Or.App. 270, 826 p.2d 51, 53–54 (1992). Defendant had an available means by which he could have attempted to lawfully possess a firearm. See e.g. *U.S. v. Graves,* 554 F.2d 65 (3rd Cir.1977). Defendant, therefore, never came within a category of persons to which the *Galioto* reasoning was applicable. Defendant was not discriminated against because he had an avenue of relief available to him under § 925(c). He could not ignore that process and at the same time claim a denial of equal protection because he was not eligible for the benefit of restoration of rights provision.[5] Finally, the Supreme Court in *Heller v. Doe,* —— U.S. ——, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993) applied the rationality of statutory classification standard to uphold a state classification for commitment of mentally retarded persons who were held involuntarily, which is the standard under which defendant's alienage

claim has been assessed and found without merit. The State of Kentucky had drawn a distinction between standards for mentally ill and mentally retarded persons [6] using analogous logic. In the restoration of rights provision of § 921(a)(20) the Congress could justify a rational difference between aliens and citizens as to the restoration of rights provision where an alien could have other means of obtaining permission to have a firearm. Restoration of rights is only one method for lawful possession of a firearm by a convicted felon. It cannot be said the classification as it operates here is "wholly irrelevant" to the congressional objective. *Heller v. Doe,* supra, —— U.S. at p. ——, 113 S.Ct. at p. 2645; *Holt Civic Club v. City of Tuscaloosa,* 439 U.S. 60, 99 S.Ct. 383, 58 L.Ed.2d 292 (1978).

 In addition, the defendant's claim of unconstitutionality of § 921(a)(20) as applied must be rejected for another critical reason. In Utah, the treatment of aliens and citizens is the same in regard to restoration of rights. There is no difference. In *United States v. Flower,* 29 F.3d 530 (10th Cir., 1994) the defendant was convicted of a violation of 18 U.S.C. § 992(g)(1). The defendant contended no crime had been committed because he had had his civil rights restored. Defendant was convicted in the District of Utah under 18 U.S.C. 922(g)(1) based on a prior Utah conviction for a crime with a penalty of confinement in excess of one year. Defendant had prior felony convictions in Utah. Flower argued he could possess a firearm under Utah Code Ann. § 76–10–503(1) and for hunting under § 76–10–512. Flower also argued the Utah Constitution gave him the right to bear arms. Utah Const., Arts. I and 6. The Court cited the Supreme Court's decision in *Beecham v. United States,* —— U.S. ——, ——, 114 S.Ct. 1669, 1670, 128 L.Ed.2d 383 (1994) for the conclusion that the law of the jurisdiction where the predicate conviction occurred determines whether a defendant's civil rights have been restored. *Flower,* 29 F.3d at p. 532, 534. The Court

---

5. In *U.S. v. Buffaloe,* 449 F.2d 779 (4th Cir.,1971) the court upheld the preamendment constitutionality of the mentally committed person disqualification of 18 U.S.C. § 922(D)(4). A similar result on a different challenge basis was reached in *Redford v. U.S. Dept. of Treasury,*

*Bureau of Alcohol, Tobacco, and Firearms,* 691 F.2d 471, 473 (10th Cir.,1982).

6. See also *City of Cleburne, Tex. v. Cleburne Living Center,* 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).

held, based on *Maines,* supra., that all the rights to vote, hold public office, and serve on a jury must be restored as well as the right to possess a firearm. *Id.,* 29 F.3d at p. 535. The Court concluded that because under Utah law a citizen's right to serve on a jury is not restored, that is no restoration of civil rights occurred in Utah under 18 U.S.C. § 921(a)(20). Therefore, in Utah, neither a citizen nor an alien, whose conviction occurred in Utah for the predicate purposes of § 922(g)(1), can avail themselves of the restoration of rights provision of § 921(a)(20). There is no different classification between citizen and alien. Whether circumstances may be different in other states is not an issue before this court. See *United States v. Mendes,* supra. The defendant's argument of the unconstitutionality of § 920(a)(1) must be rejected.

### CONCLUSION

The defendant's motion for dismissal of the indictment based on a claim of unconstitutionality of 18 U.S.C. § 921(a)(20) as applied should be denied.

Copies of the foregoing Report and Recommendation are being mailed to the parties who are hereby notified of their right to object to the same. The parties are further notified that they must file any objections to the Report and Recommendation within ten (10) days after receiving it. Failure to file objections may constitute a waiver of those objections on subsequent appellate review.

**DATED** this 29th day of July, 1994.