Kirk **MURPHY, James Hartnett, Stephen Royal, Kevin Brinkofski, Erica Stephan, Tom Wiemann, Judith Henshel, James Johnston, and Lori Burge,** Plaintiffs,

v.

Darrel **KENOPS, United States Forest Service, and Marion County,** Defendants.

No. Civ. 98–6213–HO.

United States District Court, D. Oregon.

Dec. 16, 1999.

---

Christine M. Jewel, Philomath, OR, for Plaintiffs.

Michael J. Hansen, Timothy T. A. Jensen, Salem, OR, Defendants.

## ORDER

HOGAN, District Judge.

### I. *Background*

Plaintiffs bring this lawsuit against Darrell Kenops, the Forest Supervisor of the Willamette National Forest and the United States Forest Service (collectively "the federal defendants"), and Marion County ("the county defendant"), alleging violations of plaintiffs' rights to freedom of speech. Plaintiffs contend that they have a right to protest in a peaceful manner in national forests in plain view of logging when such protest neither endangers anyone nor interferes with logging operations. Plaintiffs contend that certain regulations are unconstitutional, facially and as applied to plaintiffs.

### A. *Undisputed Facts*

On August 6, 1996, several (non-plaintiff) protesters blocked a forest service road leading to the Horse Byars Timber sale. On that date, defendant Kenops issued Closure Order No. 202 ("Closure Order") pursuant to 36 C.F.R. §§ 261.50(a) and (b), 261.53(e) and (f), and 261.54(e). The Forest Service asserts that the reason for the issuance of the Closure Order was protection of public health and safety and protection of property. The Closure Order was in effect for several months, and kept the public approximately two miles, by road, from the Horse Byars Timber sale.

On August 6, 1996, the road-blocking protesters were arrested for violating the Closure Order.

Plaintiffs were arrested on Saturday, August 10, 1996, when they entered an area closed by the Closure Order without a permit,[1] approximately two miles away from the logging site. No logging was taking place on that day. Forest Service officers participated in arresting plaintiffs. Marion County Sheriff's officers searched the plaintiffs and transported them to the Marion County jail. Plaintiffs were charged in an August 27, 1996, information with second degree criminal trespass pursuant to Or.Rev.Stat. section 164 .245 for allegedly "unlawfully and knowingly remaining upon the premises at Forest Road 4696–701" inside the closed area.

On February 26, 1997, Marion County District Judge Joseph Ochoa granted a motion to dismiss after finding the Closure Order was unconstitutionally overbroad.

Plaintiffs seek declaratory relief against the federal defendants, and damages and declaratory relief against the county defendant.[2]

Now before the court are the federal defendants' motion for summary judgment (# 53), plaintiffs' cross-motion for summary judgment (# 74), and the county de-

---

1. Closure Order 202 allowed for exemptions for persons with permits to enter the area affected by the closure. District rangers had authority to issue permits providing for exemptions of the prohibitions listed in Closure Order 202.

2. This court previously dismissed with prejudice a *Bivens* claim against federal defendant Kenops due to qualified immunity. Other claims were dismissed without prejudice, and plaintiffs were allowed to amend their complaint.

fendant's motion for summary judgment (# 61). Oral argument was held at the University of Oregon School of Law on November 15, 1999.

## II. *Standard of Review*

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Bennett v. Spear,* 520 U.S. 154, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) (to survive motion for summary judgment for lack of standing, "a plaintiff must 'set forth' by affidavit or other evidence 'specific facts' ") (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. There is also no genuine issue of fact if, on the record taken as a whole, a rational trier of fact could not find in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Taylor v. List,* 880 F.2d 1040 (9th Cir.1989).

## III. *Discussion*

### A. *Plaintiffs' Claim for Declaratory Relief*

Plaintiffs seek declaratory relief against both the federal and county defendants, contending that they have the right under the First Amendment to peacefully protest Forest Service policies in plain view of logging in a manner that neither endangers anyone nor interferes with logging operations. Plaintiffs further contend that the Forest Service has a custom of closing off areas of the national forest surrounding controversial timber sales pursuant to 36 C.F.R. §§ 261.50 and 53 which are larger than necessary for the significant governmental interest of public safety and protection of property.

Plaintiffs seek a declaration of their right to engage in peaceful protest and finding 36 C.F.R. §§ 261.50 and 53 unconstitutional, null and void, and of no effect in that: (1) the "public health and safety" basis for closures found in 36 C.F.R. § 261.53(e) is standardless and vague, allowing Forest Service officials to close national forests based on their subjective, unbridled discretion, contravening plaintiffs' due process and First Amendment rights; (2) 36 C.F.R. §§ 261.50 and 53 provide no guidelines for issuing closure orders, thereby allowing for the issuance of overbroad closure orders; (3) 35 C.F.R. §§ 261.50 and 53 allow for orders, including Closure Order 202, which exempt persons with permits, but provide no standards for permit-issuing officials, allowing Forest Service officials to deny permits for expressive activity based on their subjective, unbridled discretion, contravening plaintiffs' due process and First Amendment rights; (4) 36 C.F.R. § 261.50 provides no clear procedure for application of permits, nor does it impose time frames for when a decision on such applications must be delivered, nor does it provide for administrative or judicial review, contra-

vening plaintiffs' due process and First Amendment rights; and (5) the regulations violate due process by depriving plaintiffs of their liberty interest in exercising free speech rights in a public forum without first providing notice and an opportunity for a hearing before the Forest Service issues orders which close or restrict use of the national forests, contravening due process and First Amendment rights. To clarify, plaintiffs here do not challenge a closure order, but rather, attempt to challenge the federal regulations that authorize the issuance of closure orders.

### 1. *The First Amendment and Standing*

The Constitution limits federal courts to deciding cases and controversies. *See* U.S. CONST. art. III; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The doctrine of standing is a core component of the case-or-controversy requirement. *See id.* at 560, 112 S.Ct. 2130. Thus, before the court may address whether the regulations as applied or on their face are unconstitutional, the court must first decide whether it has jurisdiction.

To have standing, plaintiffs must satisfy three elements. First, plaintiffs must have suffered an injury in fact—"an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not 'conjectural' or 'hypothetical.'" *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Second, plaintiffs must establish "a causal connection between the injury and the conduct complained of." *Id.* Third, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* at 561, 112 S.Ct. 2130.

The determining issue here is the first—injury in fact. Even if plaintiffs have suffered past injuries, they do not have standing to seek equitable relief unless they face a real and immediate threat of repeated injury. *See Nelsen v. King County*, 895 F.2d 1248, 1251 (9th Cir.1990). Plaintiffs seeking prospective relief must show that they "[are] immediately in danger of sustaining some direct injury," and that threatened injury may not be " 'conjectural' or 'hypothetical.'" *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (citation omitted); *see also Whitmore v. Arkansas*, 495 U.S. 149, 158, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990) (threatened injury must be "certainly impending").

Plaintiffs' showing on this first element is lacking, as they fail to provide specific or concrete details regarding a threat of future harm. *See Defenders of Wildlife*, 504 U.S. at 564, 112 S.Ct. 2130. On this motion for summary judgment, as opposed to the earlier motion to dismiss, plaintiffs must support general allegations by affidavit or other evidence of specific facts. *See Bennett*, 520 U.S. 154, 117 S.Ct. 1154, 137 L.Ed.2d 281 (citing *Defenders of Wildlife*, 504 U.S. at 561, 112 S.Ct. 2130). Plaintiffs' own affidavits do not evidence the existence of actual and specific plans to protest in the near future; rather, they reveal specific, but now-past plans, or generalized future plans. *See* Plaintiffs' Exhibits A, ¶¶ 12–14; D, ¶¶ 16–17; F, ¶ 11; G, ¶¶ 10–11; H, ¶ 17. *See Defenders of Wildlife*, 504 U.S. at 563–64, 112 S.Ct. 2130 (" '[S]ome day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require.").

More importantly, even if plaintiffs had presented sufficient evidence of particularized future and imminent plans to protest, there still is no evidence that they will be injured in the near future. Plaintiffs' argument—that the Forest Service will exercise its discretion to issue future closure orders, that the closure orders will violate the First Amendment, that plaintiffs will

violate those closure orders, and that plaintiffs will be arrested because of those closure orders—relies on a "chain of speculative contingencies." *Nelsen v. King County,* 895 F.2d 1248, 1252 (9th Cir.1990). Such a speculative threat is insufficient to create standing.[3] *See Associated Gen. Contractors of California, Inc. v. Coalition for Economic Equity,* 950 F.2d 1401, 1407 (9th Cir.1991), *cert. denied,* 503 U.S. 985, 112 S.Ct. 1670, 118 L.Ed.2d 390 (1992) (standing does not exist if future injury is too speculative—if the record provides little indication that the plaintiffs had firm intentions to "take action that would trigger the challenged governmental action" or that if they did, "they would be subjected to the challenged governmental action").

This case is similar to *Eggar v. City of Livingston,* 40 F.3d 312 (9th Cir.1994), wherein the Ninth Circuit held that it was too speculative to assume that the plaintiffs would commit future crimes in the city, be indigent, plead guilty, and be sentenced to jail. Likewise, here, it is too speculative to assume that: (1) a closure order will be issued; (2) it will include provisions closing all areas near the logging site without providing an alternative site for demonstrations; (3) the plaintiffs will violate the order and cross the closure barrier; and (4) the plaintiffs will again be arrested and prosecuted. This chain of events is too speculative, and thus fails to confer standing.

The instant case presents a situation different from that in cases cited by plaintiffs wherein the constitutionality of a specific closure order was challenged, or where a conviction based on a violation of the closure order was challenged. *See, e.g., United States v. Wilner,* Cr. 95–067 (D.Idaho 1997); *see also United States v. Fee,* 787 F.Supp. 963 (D.Colo.1992). In those cases an actual case or controversy existed because the closure order was then in effect and threatened to imminently harm the plaintiffs. Here, there is no such closure order in effect that is being challenged; rather, plaintiffs attempt to challenge the federal regulations which authorize the issuance of closure orders, not any specific closure order itself.

■ Although plaintiffs fail to establish first party standing, plaintiffs may still have standing if their claims fall under the "overbreadth" exception to the general rule against third party standing. The United States Supreme Court has held that "where the claim is that a statute is overly broad in violation of the First Amendment, the Court has allowed a party to assert the rights of another without regard to the ability of the other to assert his own claims and with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity." *Secretary of State of Maryland v. Joseph H. Munson Co.,* 467 U.S. 947, 957, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984).

Plaintiffs allege that the regulations are overbroad and, therefore, have a chilling effect on plaintiffs' speech. *See* Second Amended Complaint. At first glance, these allegations seem to satisfy the requirements for third party standing.

■ This narrow exception, however, is used only in cases where the regulation challenged, by its own terms, seeks to regulate "pure speech", i.e., "only spoken words." *See Broadrick v. Oklahoma,* 413 U.S. 601, 612, 615, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973) ("Such claims of facial overbreadth have been entertained in cases involving statutes which, by their terms, seek to regulate 'only spoken words.' "). An exception was created for this situation due to the fear "that the statute's very existence may cause others

---

**3.** Plaintiffs' efforts to create a material issue of fact as to whether the Forest Service is likely to issue a closure order in the near future is unavailing. There is no evidence that a closure order will be issued at all, no less in an area where plaintiffs will protest, and that plaintiffs will violate the closure order and be arrested.

not before the court to refrain from constitutionally protected speech or expression." *Id.* at 612, 93 S.Ct. 2908.

■ Here, the challenged regulations do not on their face restrict spoken words, but rather, as alleged by plaintiffs, they merely *"allow[ ] for orders,"* for example, Closure Order 202, which, themselves, are allegedly over broad and are invalid prior restraints. Second Amended Complaint, p. 6, at ¶ 27 (emphasis added). Because the regulations on their face do not regulate "pure speech," and arguably do not even regulate "conduct," there is little, if any, realistic fear that the regulations' very existence will cause others to refrain from constitutionally protected speech or expression. *See Broadrick,* 413 U.S. at 612, 615, 93 S.Ct. 2908 (emphasizing dangers of regulating "pure speech," as compared with regulating "conduct"). The situation may have been different if plaintiffs challenged an actual closure order; but here, there is no closure order in effect that is being challenged.

## 2. *Ripeness for Judicial Review*

Even if plaintiffs satisfied the standing requirement of the case-or-controversy requirement, this case is not ripe for judicial review.

"[T]he ripeness doctrine seeks to separate matters that are premature for review because the injury is speculative and may never occur from those cases that are appropriate for federal court action." *Portman v. Santa Clara,* 995 F.2d 898, 902 (9th Cir.1993) (citing Chemerinsky, Federal Jurisdiction 99 (1989)).

■ The ripeness inquiry has two parts: first, "whether the issues are fit for judicial decision;" and, second, "whether the parties will suffer hardship if we decline to consider the issues." *San Diego County Gun Rights Committee v. Reno,* 98 F.3d 1121, 1132 (9th Cir.1996).

■ The first component—whether the issues are fit for judicial decision—must be answered in the negative for the same reasons that the plaintiffs do not have standing: there is no sufficient injury. *See Portman,* 995 F.2d at 903 (noting issue "closely tied to the standing requirement"). Rather, plaintiffs attempt to generally challenge a regulation; such challenge is not ordinarily ripe for review "until the scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out, by some concrete situation in a fashion that harms or threatens to harm [plaintiffs]." *Lujan v. National Wildlife Federation,* 497 U.S. 871, 891, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). When a regulation authorizes an agency to take some action but does not itself put the action into effect, the Supreme Court and the Ninth Circuit have refused on ripeness grounds to consider general challenges to the regulation. *See, e.g., INS v. Legalization Assistance Project v.* 510 U.S. 1301, 1303, 114 S.Ct. 422, 126 L.Ed.2d 410 (1993); *Toilet Goods Ass'n. v. Gardner,* 387 U.S. 158, 164, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967) ("We believe that judicial appraisal of these factors is likely to stand on a much surer footing in the context of a specific application of this regulation than could be the case in the framework of the generalized challenge made here."); *Western Mining Council v. Watt,* 643 F.2d 618, 627 (9th Cir.1981) ("The mere possibility that the Secretary may act in an arguably unconstitutional manner pursuant to one or more of [the legislative acts] is insufficient to establish the 'real and substantial controversy' required to render a case justiciable under Article III."). Plaintiffs' claim is not justiciable because it attempts to generally challenge an authorizing regulation, rather than challenging a specific closure order.

In addition, potential hardship to the parties does not compel a finding of ripeness in this matter. *See Toilet Goods Ass'n,* 387 U.S. at 162, 87 S.Ct. 1520. Under this prong, plaintiffs must show that postponing review imposes a hardship on

them "that is immediate, direct, and significant," and that affects their "day-to-day affairs." Municipality of *Anchorage v. United States*, 980 F.2d 1320, 1326 (9th Cir.1992) (citing *Toilet Goods Ass'n*, 387 U.S. at 164, 87 S.Ct. 1520). Plaintiffs' unsupported assertion that they are under a "significant threat of criminal prosecution for engaging in constitutionally protected speech" is insufficient as they must be under such threat because of the challenged regulation. They are not, however, under any imminent or direct threat due to the challenged regulation because the regulation only provides authorization for a closure order. No such closure order is in effect. Plaintiffs will not be harmed by waiting until such an allegedly unconstitutional closure order is issued.

This court concludes that this case is not justiciable due to a lack of standing and ripeness. Accordingly, the federal defendants' motion for summary judgment is granted, and the county defendant's motion for summary judgment as to the declaratory relief claim is also granted.

### B. *Plaintiffs' Damages Claim Against the County Defendant*

Plaintiffs seek damages against the county defendant arising out of plaintiffs' prior arrests. Plaintiffs contend that defendant Marion County violated plaintiffs' free speech rights when its officers assisted in plaintiffs' arrest, including transporting and jailing plaintiffs.[4] Plaintiffs further contend that the violation of their free speech rights was a result of defendant Marion County's: (1) deliberate indifference in training and supervising its officers regarding the free speech rights of the public when protesting in national forests, and (2) practice and custom of assisting the Forest Service in enforcing unconstitutional closure orders.

As opposed to the declaratory relief claim which seeks prospective relief from

the regulations that authorize potential *future* closure orders, the damages claim contends that plaintiffs are entitled to damages due to the *prior* closure order that was issued and resulted in plaintiffs' arrests. Marion County District Court Judge Joseph Ochoa found that the prior closure order was unconstitutionally overbroad. *See* Plaintiffs' Memorandum in Opposition to County Defendants' Motion, at Exhibit F.

 Local governments are only liable under section 1983 for constitutional torts that amount to a custom, policy or practice. *See Monell v. Department of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). An alleged violation must have been committed pursuant to a formal governmental policy or longstanding practice or custom that constitutes the standard operating procedure for the governmental entity. *See Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir.1996). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Id.*

 Plaintiffs, however, allege that this situation falls under at least one of the three situations recognized by the Supreme Court as establishing municipal liability based on an isolated constitutional violation: (1) when the person causing the violation has final policymaking authority; (2) when the final policymaker ratified a subordinate's actions; and (3) when a final policymaker acted with deliberate indifference to a subordinate's constitutional violations. *See Christie v. Iopa*, 176 F.3d 1231 (9th Cir.1999).

 The county defendant admits that the Sheriff of Marion County had the final

---

4. For purposes of this motion only, the county defendant treats plaintiffs' arrests as if it were responsible for them.

policymaking authority with regard to law enforcement matters at the time of plaintiffs' arrests. Plaintiffs allege that he caused the violation of plaintiffs' constitutional rights to free speech—i.e., he caused their arrest based on the overbroad closure order. Although defendant argues that the deputies, not the sheriff, actually performed the arrests, and thus, the sheriff did not cause their arrests; a trier of fact could find that he knew of and approved and/or ratified his deputies' actions of arresting plaintiffs. *See, e.g.,* Agreement between Marion County and Forest Service for assistance in law enforcement in the Willamette National Forest (signed by the sheriff), attached as Exhibit A to Plaintiffs' Memorandum in Opposition; Newspaper Article, attached as Exhibit C to Plaintiffs' Memorandum in Opposition (showing media coverage of arrest of protesters, evidencing sheriff's probable knowledge of arrests).[5]

■ Moreover, defendant's qualified immunity argument, cloaked in other terms, is unpersuasive. Defendant argues that the sheriff deputies relied on a facially valid closure order, and thus had probable cause to arrest plaintiffs. Defendant then concludes that because the deputies had probable cause, the county is privileged. This analysis, however, was expressly rejected by the Ninth Circuit in *Grossman v. Portland,* 33 F.3d 1200, 1203 (9th Cir. 1994). The Ninth Circuit in *Grossman* noticed that this "unusual approach" was utilized by the trial court in granting the defendant city and its officer summary judgments. The Ninth Circuit disapproved of the analysis, finding that the court "clear[ly] misread[ ]" prior case law. *Id.* at 1203. Instead, the Ninth Circuit found that the issue is not whether the officers had probable cause, but rather, whether the restriction on speech was con-

stitutional. Thus, defendants' analysis is not utilized.

There are disputed issues of material fact precluding summary judgment as to plaintiffs' damages claim against the county defendant.

## IV. *Conclusion*

Based on the foregoing reasons, this court grants the federal defendants' motion for summary judgment (# 53) due to a lack of standing and ripeness; denies as moot plaintiffs' cross-motion for summary judgment (# 74); and grants in part and denies in part the county defendant's motion for summary judgment (# 61), granted with respect to the declaratory relief claim due to a lack of standing and ripeness, and denied with respect to the damages claim due to disputed issues of material fact.

IT IS SO ORDERED.

---

**5.** Plaintiffs' argument that Marion County was deliberately indifferent in training and supervising its officers, and that this led to the improper arrests of plaintiffs is not similarly availing. Plaintiffs have not provided suffi-

cient evidence to create a material issue of disputed fact; but rather, their claim relies on unsupported conclusions. *See* Plaintiffs' Memorandum in Opposition, at pp. 7–9.