Because the Court's temporary restraining order concluded that the Immigration Organizations had established serious questions going to the merits of their notice-and-comment claims, ECF No. 43 at 27-29, it follows that Defendants also have shown serious questions going to the merits. Cf. Leiva-Perez , 640 F.3d at 970 (explaining that the "serious questions" test requires less than "showing that success is more likely than not"). Nonetheless, the existence of such questions does not support a stay. First, Defendants have not shown a probability of demonstrating that the Rule is valid, so the presence or absence of defects in the process by which it was promulgated are largely immaterial to whether it should remain in place. Second, as explained below, Defendants have not shown that "the balance of hardships tips sharply in [their] favor." Id. at 970.
*1092 B. Irreparable Injury
At the outset, the Court is compelled to reject Defendants' argument that an injunction against the Executive Branch "a fortiori" imposes irreparable injury. See Washington v. Trump , 847 F.3d 1151, 1168 (9th Cir. 2017), cert. denied sub nom. Golden v. Washington , --- U.S. ----, 138 S.Ct. 448, 199 L.Ed.2d 331 (2017) ("[T]o the extent that the Government claims that it has suffered an institutional injury by erosion of the separation of powers, that injury is not 'irreparable.' It may yet pursue and vindicate its interests in the full course of this litigation."); Texas v. United States , 787 F.3d 733, 767-68 (5th Cir. 2015) (finding no irreparable injury because, while the United States "claims that the injunction offends separation of powers and federalism, ... it is the resolution of the case on the merits, not whether the injunction is stayed pending appeal, that will affect those principles."). Cases identifying the irreparable harm from the injunction of State statutes do not hold otherwise. See Maryland v. King , 567 U.S. 1301, 1303, 133 S.Ct. 1, 183 L.Ed.2d 667 (2012) (Roberts, C.J., in chambers); O Centro Espirita Beneficiente Uniao De Vegetal v. Ashcroft , 314 F.3d 463, 467 (10th Cir. 2002) ; cf. N.M. Dep't of Game & Fish v. U.S. Dep't of Interior , 854 F.3d 1236, 1255-56 (10th Cir. 2017) (distinguishing King where "Federal Appellants have been enjoined from effectuating their interpretation of the Act and their internal regulations").[3]
Defendants' remaining claims of irreparable injury are inseparable from their arguments that the Rule best serves the public interest by avoiding harm to potential asylum seekers. ECF No. 52 at 4-5. As explained below, the Court finds those arguments unpersuasive.
C. Substantial Injury to Other Parties
Defendants' argument on the third factor fails on both fronts. First, Defendants' argument that the Immigration Organizations themselves must have suffered "irreparable harm," ECF No. 52 at 6, fails because Defendants have not shown serious questions on third-party standing. Further, Defendants conflate the preliminary injunction standard with "whether issuance of the stay will substantially injure the other parties interested in the proceeding." Nken , 556 U.S. at 433, 129 S.Ct. 1749 (citations omitted). This test permits the Court to consider the harm to non-parties. See Latta v. Otter , 771 F.3d 496, 500 (9th Cir. 2014) ; Lair v. Bullock , 697 F.3d 1200, 1215 (9th Cir. 2012). Defendants *1093 raise no credible argument that asylum seekers are not parties "interested" in the validity of the Rule, and the TRO Order details the injuries they face. See ECF No. 43 at 30-31.
Second, Defendants' argument that the Immigration Organizations suffer no harm because they may now comment on the Rule is not supported by authority and does not address cases holding otherwise. See ECF No. 43 at 31; California v. Health & Human Servs. , 281 F.Supp.3d 806, 830 (N.D. Cal. 2017).
D. Public Interest
The last factor in the analysis is the public interest. As to this point, the Government largely repeats the arguments from its prior brief. Similarly, the Court arrives at the same conclusion regarding where the public interest lies at this stage of the case. ECF No. 43 at 32-33. Noting Congress's clearly-expressed intent regarding the availability of asylum, the Court gives substantial weight to the political branches' control over immigration, see Landon v. Plascencia , 459 U.S. 21, 34, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982), and in particular that the Supreme Court has "repeatedly emphasized that over no conceivable subject is the legislative power of Congress more complete than it is over the admission of aliens." Fiallo v. Bell , 430 U.S. 787, 792, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977) (citation omitted). The Court also considers that "where the agency's discretion has been clearly constrained by Congress," courts have concluded that "there is an overriding public interest ... in the general importance of an agency's faithful adherence to its statutory mandate." Ramirez v. U.S. Immigration & Customs Enf't , 310 F.Supp.3d 7, 33 (D.D.C. 2018) (alteration in original) (second quoting Jacksonville Port Auth. v. Adams , 556 F.2d 52, 59 (D.C. Cir. 1977) ). The Rule deviates substantially from this mandate.
In addition to these more abstract considerations, Defendants argue that the public interest suffers a more practical harm because, while the Rule is enjoined, more asylum seekers will cross illegally between ports of entry. ECF No. 52 at 4-5. Defendants have the right, as they have asserted, to "use every legal tool available to halt this dangerous and illegal practice." ECF No. 52 at 4. But Defendants have not shown even serious questions that the Rule is, in fact, legal. Moreover, the record to date reveals that, far from using every available tool, Defendants have been actively deterring asylum seekers from ports of entry. See, e.g. , ECF No. 35-3 at 17-28.
Finally, the Court rejects Defendants' implicit suggestion that the only way to fix a statute they disagree with is to issue a rule that directly contravenes the statute. As Justice Gorsuch noted, "[i]f a statute needs repair, there's a constitutionally prescribed way to do it. It's called legislation. To be sure, the demands of bicameralism and presentment are real and the process can be protracted. But the difficulty of making new laws isn't some bug in the constitutional design: it's the point of the design, the better to preserve liberty." Perry v. Merit Sys. Prot. Bd. , --- U.S. ----, 137 S.Ct. 1975, 1990, 198 L.Ed.2d 527 (2017) (Gorsuch, J., with Thomas, J., dissenting); see also U.S. Const., art. I, § 1 ("All legislative Powers herein granted shall be vested in a Congress of the United States[.]").
The motion is denied.
IT IS SO ORDERED.

Nor does a requirement to implement the existing statutory scheme per the status quo - under which the government retains the discretion to deny asylum in every case - come close to the affirmative intrusions required by the injunctions stayed in other cases. See I.N.S. v. Legalization Assistance Project of Los Angeles Cty. Fed'n of Labor , 510 U.S. 1301, 1302-03, 114 S.Ct. 422, 126 L.Ed.2d 410 (1993) (O'Connor, J., in chambers) (injunction "requiring the INS to, among other things, identify and adjudicate legalization applications filed by certain categories of applicants, not arrest or deport certain classes of immigrants, and temporarily grant certain classes of immigrants stays of deportation and employment authorizations"); Heckler v. Lopez , 463 U.S. 1328, 1331, 104 S.Ct. 10, 77 L.Ed.2d 1431 (1983) (finding injunction would likely be reversed on scope alone, regardless of the merits, because "its mandatory nature, its treatment of the statutory requirement of exhaustion of administrative remedies, and its direction to the Secretary to pay benefits on an interim basis to parties who have neither been found by the Secretary nor by a court of competent jurisdiction to be disabled, significantly interferes with the distribution between administrative and judicial responsibility for enforcement of the Social Security Act which Congress has established"); Adams v. Vance , 570 F.2d 950, 954 (D.C. Cir. 1978) ("request for an order directing action by the Secretary of State in foreign affairs").